UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ATLP, a minor, by and through his Guardian Ad Litem TAYLORIA TAYLOR; and AJB, a minor by and through is Guardian Ad Litem TAYLORIA TAYLOR and TAYLORIA TAYLOR as Co-Special Administrator of the ESTATE OF BRANDON VAON PATTON, deceased,<br><br>  Plaintiffs,<br><br>v.<br><br>CORECIVIC, INC., formerly CORRECTIONS CORPORATION OF AMERICA, a foreign corporation d/b/a Nevada Southern Detention Center; DOE CORECIVIC EMPLOYEES I through XX; DOES I through X; and ROE ENTITIES I through X, inclusive,<br><br>  Defendants. | Case No. 2:21-cv-02072-JCM-EJY<br><br>**REPORT AND RECOMMENDATION**<br>**Re: ECF No. 77** |

Pending before the Court is Plaintiffs' Motion to Amend Complaint (the "Motion" or "Motion to Amend"). ECF No. 77. The Court considered the Motion, Response (ECF No. 80), and Reply (ECF No. 82). The parties and the Court are well versed in the facts that underlie this dispute and, thus, a factual summary is not provided. Facts relevant to the instant Order are included in the discussion below.

**I.   Discussion**

  a.   <u>The Motion to Amend is not Untimely</u>.

This issue arises from confusion originally created by an Unopposed Motion to Extend Discovery Deadlines filed by Plaintiffs on January 6, 2023 (the "January Motion"). In that January Motion, the parties agreed to extend discovery deadlines along with the due dates for dispositive motions and the joint proposed pretrial order. ECF No. 39 at 7. Extension of the deadline to amend pleadings and add parties was not included in what the parties requested. *See id*., *generally*. The Court granted the unopposed Motion (ECF No. 42); however, on January 23, 2023 Plaintiffs filed

an improper "Errata" stating the deadline to amend pleadings was inadvertently left out of the January Motion. ECF No. 50. The Errata was signed only by Plaintiffs' counsel. *Id*. Thus, it did not represent agreement of the parties as confirmed by Defendants' "Objection" to the Errata filed on February 15, 2023. ECF No. 57.

An errata is "[a] notice of … the changes made to the corrected document." United States District Court for the District of Nevada Local Rule ("LR") IC 2-2(h). An unopposed motion presupposes agreement by all parties affected by the motion. An errata providing a change made to correct an unopposed motion would therefore also have to represent agreement by all parties affected by the change. Here, Plaintiffs' Errata did not represent agreement to extend the cutoff for filing amended pleadings. Instead, the Errata stated: "Plaintiffs inadvertently left out the deadline to amend the Complaint," and was then signed, as stated, only by Plaintiffs' counsel. ECF No. 50 at 2, 3. The Errata did not seek a signature of the Court and no approval of the Errata was ever entered. *See* Docket, *generally*.

For reasons the Court does not understand, instead of seeking to strike the Errata, Defendants filed an Objection to the Errata more than three weeks later. ECF No. 57. Objections may be filed to a Magistrate Judge's Order.[1] No "Order" regarding the Errata was issued; hence, the Objection was not considered by the Court. *See* Docket, *generally*.

On April 6, 2023, Plaintiffs filed a fourth Unopposed Motion to Extend Discovery (the "April Unopposed Motion") in which the due date to amend pleadings and add parties was extended to July 26, 2023. ECF No. 64 at 10. In footnote 5 of the April Unopposed Motion it states:

> On January 6, 2023, Plaintiffs filed an Unopposed Motion to Extend Discovery Deadlines … [ECF No. 39[2]] which inadvertently left out the deadline to amend and add parties. On January 9, 2023, the Court granted Plaintiffs' Unopposed Motion. … ECF No. 42. On January 23, 2023, Plaintiffs filed an Errata to their Motion to Extend Discovery Deadlines to include the deadline to amend and add parties. [… ECF No. 50]. On February 15, 2023, Defendant filed an Objection to Plaintiff's Errata. [… ECF No. 57]. The Court has not ruled on the subsequent Errata.

---

[1]   LR IB 3-1(a) states in pertinent part: "Any party wishing to object to the magistrate judge's *order* on a pretrial matter must file and serve specific written objections. The deadline to file and serve any objections to a magistrate judge's order is 14 days after service of the order." (Emphasis added.)

[2]   The parties are advised to review the Local Rules and, henceforth, must refer to documents by their "**ECF No.**" not by "DKT." LR IA 7-2. Further, to the extent citations were made to the Nevada Rules of Civil Procedure (*see*, *for example*, ECF No. 82 at 4), such Rules are inapplicable in federal court.

ECF No. 64 at 10-11, n.5.  However, as explained above, the Court does not rule on errata as an errata should only correct ministerial errors made in a previously filed document that is pending before the Court.  The Court also does not rule on objections that are not filed in response to an order.

Compounding the parties' errors, the Court granted the April Unopposed Motion to Extend Discovery that included the July 26, 2023 cutoff for filing amended pleadings without commenting on footnote 5.  ECF No. 65.³  Thereafter, on July 17, 2023, the parties filed a Stipulation and Order to Extend Discovery Deadlines, the fifth request.  ECF No. 73.  In this Stipulation, footnote 2 states:

> … As detailed in CoreCivic's February 15, 2023 Objection to Plaintiffs' Notice of Errata, Plaintiffs failed to amend their complaint, or request an extension of time to do so, prior to the deadline's expiration. [ECF No. 57.]  The Court has not ruled on the Errata or Objection. CoreCivic's position, however, remains the same. The deadline for Plaintiffs to amend their Complaint expired long ago. CoreCivic objects to any request by Plaintiffs to allow them to amend their Complaint at the eleventh hour.

ECF No. 73 at 2, n.2.  On page 9 of the Stipulation it states: "PLAINTIFFS only request that [sic] deadline to file a motion to amend the pleadings … [be extended to] **September 27, 2023**." *Id*. at 9 (emphasis in original).

On July 24, 2023 the Court held a hearing and granted the Stipulation to Extend Discovery Deadlines with the exception of amendments to pleading and adding parties, which was denied without prejudice.  ECF No. 76.  On July 26, 2023, Plaintiffs filed their Motion to Amend Complaint (ECF No. 77) to which Defendants object arguing, in part, that the Motion is untimely.  ECF No. 80.

The Court finds Plaintiffs' Motion to Amend is not untimely.  First, to the extent Plaintiffs relied on the Court's Order granting the April Unopposed Motion, which appeared to include the parties' agreement to a motion to amend pleadings deadline of July 26, 2023, that reliance is reasonable.  ECF No. 65.  The Court's Order, silent as to the disputed date, evidences an oversight that is not fairly construed against Plaintiffs.  Second, to the extent the Court could now entertain and grant the Objection to the Errata, that action would not be harmless or non-prejudicial to

---

³ The Court notes footnote 5 did not contain an objection to the extension of the due date by which amended pleadings and added parties must be filed as represented in the body of the Unopposed Motion stating, in pertinent part, that "the *parties* shall file motions to amend the pleading … not later than July 26, 2023."  ECF No. 65 at 10.

1  Plaintiffs. *See Health and Wellness Lifestyle Clubs, LLC v. Raintree Golf, LLC*, 808 Fed.Appx. 338,
2  346 (6th Cir. 2020) (discussing whether the court's failure to enter a scheduling order was *harmless*);
3  *U.S. v. Springer*, Case No. 08-CV-278-TCK-PJC, 2009 WL 511035, at *2, n.1 (N.D. Okla. Feb. 27,
4  2009) (considering whether the legitimate error in the court's scheduling order was prejudicial to
5  defendant).  Further, U.S. Magistrate Judges are given broad discretion when making case
6  management decisions. *Forte v. Hughes*, Case No. 1:13-cv-01980-LJO-SMS, 2014 WL 12921241,
7  at *1 (E.D. Cal. Jan. 22, 2014) (internal citation omitted).  In light of the Court's failure to address
8  an ill-presented objection to an improperly filed errata, and given the broad discretion over case
9  management the Court may exercise, the Court finds the Motion to Amend is not untimely.  Thus,
10 the Court continues to an analysis of the factors under Federal Rule of Civil Procedure 15(a)(2).

          b.      <u>The Court Recommends Denying Plaintiffs' Motion to Amend</u>.

12  Under the circumstances presented here, Federal Rule of Civil Procedure 15(a)(2) allows
13 Plaintiffs to amend their pleading only by leave of court or by written consent of the adverse party,
14 which leave is freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  The Ninth Circuit
15 instructs that the policy favoring amendments "is to be applied with extreme liberality." *Morongo*
16 *Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990). The factors commonly
17 considered to determine the propriety of a motion for leave to amend are (1) bad faith, (2) undue
18 delay, (3) prejudice to the opposing party, and (4) futility of amendment. *Foman v. Davis*, 371 U.S.
19 178, 182 (1962).  These factors are applied even when an amended complaint is filed before
20 expiration of the date by which amendments must be filed. *See e.g. Moore v. City of Bonners Ferry*,
21 Case No. 2:22-cv-00376-BLW, 2023 WL 4561827, at *3 (D. Idaho. July 17, 2023); *James v.*
22 *Granger*, Case No. 1:13-cv-00983-AWI-SKO, 2015 WL 3407853, at *4 (E.D. Cal. May 26, 2015)
23 (applying factors to a timely tiled motion to amend).

24  Consideration of prejudice to the opposing party carries the greatest weight when deciding
25 whether to grant a motion to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052
26 (9th Cir. 2003).  Absent prejudice, or a strong showing of any of the remaining *Foman* factors, a
27 presumption in favor of granting leave to amend exists under Rule 15(a).  *Id*.  Finally, "liberality in
28 granting leave to amend is not dependent on whether the amendment will add causes of action or

parties." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). *See also Union Pac. R.R. Co. v. Nev. Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) ("Amendments seeking to add claims are to be granted more freely than amendments adding parties.").

Plaintiffs' proposed first amended complaint seeks to add five new individual defendants and one additional claim. The new defendants include Rebecca Smith, RN, Clinical Nurse Supervisor ("Smith"); Bonnie Holley, Health Services Administrator ("Holley"); Eugene Sapp, Chief of Unit Manager ("Sapp"); Brian Koehn, Warden, Nevada Southern Detention Center ("Koehn); and Keith Ivens, MD, Chief Medical Officer and President of Correctional Medicine Associates, PC ("Ivens"). Plaintiffs admit these individuals were "previously disclosed as 'witnesses'" by Defendants. ECF No. 77 at 5. More precisely, Defendants point out that Smith, Holley, and Koehn were disclosed in May 2022 (ECF No. 80 at 9), and Plaintiffs have been aware of Ivens' identity since October 2022. ECF No. 80 at 9, 10. A review of Plaintiffs' Reply shows no response to Defendants' contention regarding when Plaintiffs first knew of Smith, Holley, and Koehn. *See* ECF No. 82. The Court notes May 2022 was more than a year before Plaintiffs' Motion to Amend was filed in July 2023. In contrast, with respect to Ivens, Plaintiffs contend he was first disclosed in Defendants' July 21, 2023 Rule 26 supplement and they had little information regarding this proposed defendant prior to that time. ECF No. 82 at 5-6. Finally, Defendants state Plaintiffs were not diligent in moving to add Sapp as a defendant given they first requested to depose him in January 2023 and did not do so until March 6, 2023. *Id*. at 10. Neither party states when Sapp was first known to Plaintiffs or what information regarding Sapp was available before the request to depose him was made.[4]

> *i.    The Attempt to Include All Plaintiffs in the Proposed Repleaded Negligent Training and Supervision Claim is Futile.*

On August 15, 2022, the presiding District Judge in this case entered an Order arising from CoreCivic's then-pending motion to dismiss. ECF No. 33. In that Order, the District Judge stated that "Nevada survival action statute provides that while no cause of action is extinguished by death,

---

[4]    Plaintiffs argue Defendants caused delay of this matter by failing to disclose correctional officers and redacting documents. ECF No. 82 at 5. However, the instant Motion does not seek to amend the complaint to add names of correctional officers; nor is it based on disclosure of documents that were redacted. Thus, the Court finds Plaintiffs' arguments regarding delay unpersuasive.

any survival action must be brought by the estate's administrator." *Id*. at 4 *citing* NRS 41.100 and *Moreland v. Las Vegas Met. Police Dept.*, 159 F.3d 365 (9th Cir. 1998). The Court concluded that "the minor plaintiffs' claims for … negligent supervision and training must be dismissed with prejudice." *Id*. Any attempt to revive this claim on behalf of the minor plaintiffs (ATLP and AJB) is therefore futile. The Court recommends denying Plaintiffs' Motion to Amend to the extent it seeks to reassert a negligent training and supervision claim on behalf of plaintiffs ATLP and AJB.

    ii. *Plaintiff Taylor, as Co-Special Administrator of the Estate of Brandon Patton, Fails to State a Claim for Negligent Training and Supervision.*

  To state a claim for negligent training and supervision under Nevada law, the plaintiff must allege "(1) a general duty on the *employer* to use reasonable care in the training and/or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation." *Okeke v. Biomat USA, Inc.*, 927 F.Supp.2d 1021, 1028 (D. Nev. 2013) *quoting Reece v. Republic Services, Inc.,* Case No. 2:10-cv-00114-GMN-RJJ, 2011 WL 868386, at *11 (D. Nev. Mar. 10, 2011) (emphasis added). "Claims for negligent training and supervision are … premised [on the] fact that an employer should be liable when it places an employee, who it knows or should have known behaves wrongfully, in a position in which the employee can harm someone else." *Id*. *citing Daisley v. Riggs Bank, N.A.,* 372 F.Supp.2d 61, 79 (D.D.C. 2005). "An employee's wrongful behavior does not in and of itself give rise to a claim for negligent training and supervision." *Id*. *citing Colquhoun v. BHC Montevista Hospital, Inc.*, Case No. 2:10-cv-00144-RLH-PAL, 2010 WL 2346607, at *3 (D. Nev. June 9, 2010). When the question before the Court is "whether reasonable care was exercised … the issue must generally be decided by a jury." *Id*. *quoting Butler ex rel. Biller v. Bayer,* 168 P.3d 1055, 1065 (Nev. 2007).

  Here, the issue before the Court is not limited to whether reasonable care was taken. Instead, as explained by the Court in its August 15, 2022 Order, the issue is whether Plaintiff Taylor, as the special co-administrator of Brandon Patton's estate,[5] pleads facts sufficient to state a claim based on CoreCivic (the employer) placing employees it knew or should have known behave wrongfully in positions that could harm others.

---

[5]  Hereinafter, Brandon Patton is referred to herein as "Patton" or the "deceased."

At the time that Plaintiffs' original Complaint was reviewed by the Court in preparation for issuing its order regarding Defendants' Motion to Dismiss, the Court found Plaintiff Taylor's allegations stated that Defendants "acted wrongfully by failing to take appropriate COVID precautions, failing to provide Patton with his medications, and denying him air-conditioning while he was in solitary confinement." ECF No. 33 at 6. The Court found these facts were insufficient to state a claim for negligent training and supervision. *Id.* Plaintiffs' proposed first amended complaint pleads these same facts at paragraphs 20-38, 40, 42, 43, 46-49, 63-74.

Plaintiff Taylor proposed first amended complaint pleads a limited number of new allegations germane to its negligent training and supervision claim. These include:

- "Defendant Sapp was responsible for supervising case managers and staff, yet he chose to ignore when NSDC[6] staff moved between quarantined and non-quarantined units or refused to wear proper PPE equipment." ECF No. 77-1 ¶ 39;
- "Defendant Ivens, as Chief Medical Officer, failed to ensure the most up-to-date protocols and practices to prevent the spread of COVID-19 at CoreCivic, including intake, screening, quarantine, isolation, cohorting measures, personal protective equipment ("PPE"), and COVID-19 testing." *Id.* ¶ 41.
- "Defendant Holley classified" Patton as high risk, meaning his "medical information" may place him at high risk for "substantial harm" if exposed to COVID-19. *Id.* ¶¶ 44-45.
- "CoreCivic knew or should have known that its employees were actively implementing conditions of solitary confinement in order to coerce inmates to sign the COVID-19 waiver."[7] *Id.* ¶ 50.
- CoreCivic gave inmates an "ultimatum" requiring signature on the Waiver that led to the inmate moving into general population, moving to the general population, or going to the "hole" ("considered solitary confinement"). *Id.* ¶¶ 51, 55
- "Defendant Koehn, as Warden, knew that detainees were being coerced into moving housing units, but failed to act." *Id.* ¶ 54.
- "Defendant CoreCivic knew" the hole "was the only option being given high-risk detainees." *Id.* ¶ 56.
- "Defendant Koehn, as Warden, knew detainees and inmates were complaining about the pressure to move housing units and failed to act." *Id.* ¶ 58.
- "Defendant Holley, who was responsible for overseeing medical staff including nurses, did not explain, train, or otherwise discuss the Waiver with staff before disseminating the Waiver to medical staff to provide to detainees." *Id.* ¶ 62.

Further, Plaintiff Taylor's Third Cause of Action for Negligent Training and Supervision in the proposed first amended complaint (ECF No. 77-1 ¶¶ 116-123) is identical to the original pleading of this claim (ECF No. 1) except for paragraph 121 that states the following conclusion: "Defendant

---

6   NSDC stands for Nevada Southern Detention Center.
7   The "waiver," also referred to by Plaintiffs as the "acknowledgement and waiver," is referred to herein as the "Waiver."

7

CORECIVIC knew, or should have known, that its employees, specifically employees in supervisory positions, were not complying with CDC guidelines surrounding the COVID-19 pandemic, not following PPE protocol, moving between units creating cross-contamination and generally refusing to acknowledge detainee complaints about the same."[8]

The Court finds Plaintiff Taylor's additional allegations regarding the newly identified defendants add insufficient facts to state a negligent training and supervision claim against CoreCivic, the only defendant named in this cause of action. ECF No. 77-1 at 18. In sum, the new allegations aver: (1) Smith handed Patton the Waiver he ultimately signed; (2) Smith participated in the implementation of the Waivers; (3) Sapp ignored when NSDC staff moved between quarantined and non-quarantined units or refused to wear proper PPE equipment; (4) Ivens failed to ensure the most up-to-date protocols and practices to prevent the spread of COVID-19 at CoreCivic; (5) Koehn knew that detainees were being coerced into moving housing units, but failed to act; (6) Koehn knew detainees and inmates were complaining about the pressure to move housing units and failed to act; and (7) Holley failed to explain, train, or otherwise discuss the Waiver with staff before disseminating the Waiver to those staff members who provided the document to detainees.

First, the above allegations do not state a negligent training claim. There is only one allegation (repeated several times) regarding training; that is, that newly identified Defendant Holley failed to train medical staff she oversaw before disseminating the Waiver to those staff members who provided the Waivers to detainees. ECF No. 77-1 ¶¶ 62, 88, 107. This paragraph alleges no facts supporting the conclusion that CoreCivic failed to appropriately train Holley or knew or should have known that Holley acted or would act wrongfully putting others in danger. In the absence of any facts evidencing a failure to train Holley or that CoreCivic knew or should have known Holley acted or would act wrongfully (*see id.* ¶¶ 116-123), the basis for CoreCivic's liability fails as the claim rests solely on the Holley's alleged wrongful conduct. *Okeke*, 927 F.Supp.2d at 1028 *quoting Reece*, 2011 WL 868386, at *11; *see also Lamb v. FedEx. Office and Print Services, Inc.*, Case No. 20-cv-01883-GMN-NJK, 2021 WL 3361706, at *3 (D. Nev. June 11, 2021) (citing *Hall v. SSF Inc.*,

---

[8]   Paragraphs 72 and 73 of the proposed first amended complaint state as conclusions the duty owed to Brandon Patton and breach of that duty. ECF No. 77-1 ¶¶ 72-73. These paragraphs are identical to paragraphs 48 and 49 in the original Complaint. ECF No. 1 at ¶¶ 48-49.

930 P.2d 94, 99 (Nev. 1996); *Baldazo v. Elko County ex rel. Sheriff's Dept.*, Case No. 3:12-cv-00532-LHR-VPC, 2013 WL 5201091, at *6 (D. Nev. Sept. 13, 2013) (the plaintiff's "claim for negligent training rests solely on the wrongful behavior of Defendants' supervisory employees"; however, plaintiff did not "allege facts that give rise to an inference that Elko County higher-ups knew or should have known of … [a supervisor's] behavior, nor does … [the plaintiff] allege any facts concerning the training of sheriff's deputies beyond 'Defendant County of Elko has failed to exercise reasonable care in the training of its personnel.' Such conclusory allegations are powerless to overcome a motion to dismiss ….").

Second, Plaintiff Taylor does not state a negligent failure to supervise claim. Like the failure to train, the duty to supervise is an employer's obligation. Plaintiff's claim for negligent supervision depends on pleading facts that demonstrate CoreCivic should be liable because it placed an employee, who it knew or should have known behaves wrongfully, in a position in which that employee could harm someone else. *Okeke*, 927 F.Supp.2d at 1028 *citing Daisley,* 372 F.Supp.2d at 79. Plaintiff Taylor alleges CoreCivic generally failed to adequately supervise its employees and knew these employees were not following CDC guidelines. ECF No. 77-1 ¶¶ 119, 121. However Plaintiff Taylor offers no facts supporting the inference that CoreCivic knew or should have known any of its employees, including Sapp who is the only employee whose conduct is identified as the basis for the negligent supervision claim (*id*. ¶ 39), had behaved or would behave wrongfully and cause harm. There are no facts discussing what training CoreCivic did or did not provide, to ensure their employees' fitness for their respective positions. Instead, Plaintiff alleges wrongful acts by employees, which is insufficient to state this claim.

This is the second time Plaintiffs, represented by sophisticated counsel, attempted to plead a negligent training and supervision claim. Plaintiff Taylor participated in substantial discovery over a lengthy period of time but again fails to plead sufficient fact to state a negligent training and supervision claim. This case commenced on November 18, 2021. ECF No. 1. Discovery has been extended a total of six times. ECF Nos. 29, 37, 42, 65, 76, 87. Allowing another round of attempted pleading to state a negligent training and supervision claim will undoubtedly result in additional discovery. This will delay the close of discovery, delay the dispositive motion deadline, and

ultimately delay trial. After more than fourteen months of discovery set to finally close on January 26, 2024 (ECF No. 87), the Court finds that allowing another round of pleadings would be unduly prejudicial to Defendants. Plaintiff Taylor has had significant time to conduct discovery providing an opportunity to gather sufficient facts in support of a negligent training and supervision claim. She deposed Smith, Sapp, Koehn, and Holley before the Motion to Amend was filed and had the benefit of the Court's prior order regarding negligent training and supervision such that if facts exist to support such a claim, they should have been pleaded in the proposed first amended complaint.

For the above stated reasons, the Court finds (1) Plaintiff Taylor does not state a negligent training and supervision claim against CoreCivic, and (2) Defendants have met their burden of demonstrating undue prejudice. *Baldazo*, 2013 WL 5201091, at *6; *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387-88 (9th Cir. 1990); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989). *CF Ashcraft v. White Pine County Hosp. Dist.*, Case No. 3:11-cv-00383-LRH-WGC, 2012 WL 961257, at *2 (D. Nev Mar. 21, 2012); *Williams v. Allen*, Case No. CV 05-1652-PHX-PGR (MEA), 2006 WL 3499924, at *3 (D. Ariz. Dec. 5, 2006).[9]

> iii.   Plaintiffs' Proposed Amendment of its First and Second Cause of Action Alleging Wrongful Death and Negligence Should Be Denied.[10]

To state a negligence claim under Nevada law, Plaintiffs must plead facts sufficient to state "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Clark Cnty. Sch. Dist. v. Payo*, 403 P.3d 1270, 1279 (Nev. 2017). To state wrongful death under NRS 41.085, heirs and personal representatives must allege facts sufficient to demonstrate that a death was "caused by the wrongful act or neglect of another." NRS 41.085(2).

In addition to the newly stated allegations (cited above) Plaintiffs generally assert:

- In an effort to pressure and force high-risk detainees and inmates to move housing units, Defendant CORECIVIC gave detainees an ultimatum: (1) sign [the] Waiver and be moved to general population; (2) move to an open unit where they would be co-housed

---

[9]   Defendants also argue Plaintiffs' Motion to Amend demonstrates bad faith. ECF No. 80 at 14. The Court rejects this contention finding no intent to deceive, harass, mislead or disrupt proceedings.

[10]   To the extent Defendants focus on Plaintiffs somehow running afoul of the Court's Order regarding Doe and Roe pleadings, Defendants misconstrue the Court's prior Order. While general Doe and Roe pleadings are disfavored in the federal court, and Doe I through X and Roe I through X were dismissed, Plaintiffs' pleading against Doe CCI Employees I through V were allowed to proceed. ECF No. 33 at 5. The five newly identified individual defendants fall within the confines of Doe CCI Employees I through V.

10

- with protective custody detainees; or (3) go to the "hole" or solitary confinement. ECF No. 77-1 ¶ 83.
- Defendant CORECIVIC knew that detainees who refused to sign the Waiver were held in the hole in isolation. *Id*. ¶ 84.

As to newly named Defendant Koehn, Plaintiffs allege he:

- knew that detainees were being coerced into moving housing units, but failed to act; knew detainees and inmates were complaining about the pressure to move housing units and failed to act; knew detainees that refused to move housing were being denied access to programming, communication outside the detention center, had no access or limited access to the law library, and were considered to be in restrictive housing despite no discipline being implemented; and was responsible (along with other new defendants) for the implementation and/or execution and/or approval of the Waivers provided to detainees when they were coerced into moving housing units. *Id*. ¶¶ 54, 58, 59, 61.

With respect to new Defendant Holley, Plaintiffs aver she:

- classified Patton as high-risk; was responsible, along with others, for the implementation and/or execution and/or approval of the Waivers provided to detainees; was responsible for overseeing medical staff including nurses; did not explain, train, or otherwise discuss the Waiver with staff before disseminating it to those staff members who provided the Waiver to detainees. *Id*. ¶¶ 45, 61, 62.

Plaintiffs aver new Defendant Smith:

- "presented" the decedent with the Waiver form he ultimately signed leading to his move into the general population; and she, along with Koehn, Ivens, and Holley, was responsible for the implementing, executing, and/or approving the Waivers provided to detainees when they were coerced into moving housing units." *Id*. ¶¶ 60-61.

Plaintiffs say new Defendant Sapp:

- was responsible for supervising case managers and staff yet chose to ignore when staff moved between quarantined and non-quarantined units or refused to wear proper PPE equipment; and, as Chief of Unit Manager, failed to exercise a degree of care and specifically failed in those duties by having knowledge that other staff and employees of CoreCivic were not following policies and procedures to wear proper PPE equipment or prevent cross-contamination and choose to do nothing. Plaintiffs conclude SAPP knew or should have known that detainees were being forced to sign the Waiver to remove themselves from "unfair conditions." *Id*. ¶¶ 39, 81.

Finally, Plaintiffs assert new defendant Ivens:

- as Chief Medical Officer, "failed to ensure the most up-to-date protocols and practices to prevent the spread of COVID-19 at CoreCivic, including intake screening, quarantine, isolation, cohorting measures, personal protective equipment ("PPE"), and COVID-19 testing." Plaintiffs also state that Ivens, along with others, was responsible for the implementing, executing, and approving the Waiver provided to detainees when they were coerced into moving housing units. *Id*. ¶¶ 41, 61.

11

Plaintiffs conclude that approximately two weeks after Patton moved into the general population, he was hospitalized and ultimately died "[a]s a direct and proximate result of Defendants' negligence …." *Id*. ¶¶ 67, 71 90.

"Proximate [c]ause is that cause which is … unbroken by any other intervening causes, that produces the injury and without which the injury would not have occurred. A proximate cause of an injury can be said to be that which necessarily sets in operation the factors that accomplish the injury. The contributory negligence of another does not exonerate the defendant unless the other's negligence was the sole cause of injury." *Williams v. State*, 50 P.3d 1116, 1125 (2002) (internal citation and quote mark omitted).

The Court finds Plaintiffs fail to plead sufficient facts against Smith to state a negligence or wrongful death claim. In sum, Smith is said to have handed a form, she is not alleged to have created, to the decedent in response to a procedure she is also not alleged to have created, but was (allegedly) required to implement. Plaintiff does not allege that handing Patton the Waiver resulted in (proximately caused) his exposure to COVID-19 or that by doing so Patton naturally and as a consequence of that action died. Plaintiffs also do not allege that by participating in the implementation of the procedure—which implementation is only supported by the allegation that Smith handed the form to Patton—Patton would not have been exposed to COVID-19 resulting in his death. In the absence of sufficient facts supporting Smith's actions caused the injury at issue, Plaintiffs' Motion to Amend to add Smith as a defendant should be denied.

Similarly, Plaintiffs' pleading regarding Holley includes only that she apparently participated in implementing the procedure about which Plaintiffs complain (how she did so or what she did is not alleged) and she did not explain, train or discuss the Waiver with staff who distributed the Waiver to detainees. Plaintiffs' factual allegations provide no nexus between Holley's alleged failures and Patton's death. Plaintiffs assert no fact demonstrating Holley's actions or inactions produced the injury—Patton's death. Plaintiffs provide no facts from which a reasonable inference can be made that Holley set in operation the events that accomplished the injury. In the absence of these facts, Plaintiffs do not state a negligence or wrongful death claim against Holley. Based on the foregoing,

the Court recommends the Motion to Amend to add Holley as a defendant in their negligence and wrongful death claims be denied.

The Court finds that Plaintiffs' negligence and wrongful death claim fails as asserted against Koehn. While Koehn allegedly (i) assisted in implementing the Waiver process (he is not alleged to have created), (ii) knew that inmates and detainees were generally being coerced into moving housing units because they were otherwise treated as in restrictive housing without certain privileges, and (iii) knew detainees and inmates were complaining about the pressure to move, Plaintiff does not allege facts demonstrating Koehn's alleged general knowledge and participation in the Waiver process necessarily set in motion the factors that caused Patton's death. Plaintiffs do not state that Koehn knew Patton was high risk, knew that Patton's high risk factors placed him in greater danger of death if he contracted COVID-19, knew Patton signed the Waiver, knew Patton was moved into the general population, or that Koehn failed to act despite his (unpleaded) alleged knowledge. Plaintiff does not tie Koehn's alleged knowledge that inmates were being pressured to sign the Waiver and move housing units to the natural or continuous sequence of events leading to Patton's death. In the absence of facts supporting proximate causation; that is, a connection between Koehn's knowledge and "implementation" of the Waiver process on the one hand, and Plaintiffs' resulting injury (Patton's death) on the other hand, the Court finds Plaintiffs' claims of negligence and wrongful death against Koehn should not proceed as stated in the proposed first amended complaint.

Plaintiffs' claims against Sapp suffers from the same infirmity as the claims against Smith, Holley, and Koehn. Sapp is alleged to supervise others that he knew were moving between quarantined and non-quarantined units and/or failing or refusing to wear PPE. Sapp is also alleged to have known CoreCivic employees were not following policies and procedures put in place to prevent "cross-contamination." Plaintiffs further aver Sapp knew or should have known detainees were being forced to sign Waivers. Plaintiffs do not allege any facts showing that Sapp's failure to act or alleged potential knowledge regarding the Waivers started a series of events that would naturally produce Plaintiffs' injury—Patton's death. Plaintiffs do not allege that without Sapp's failures injury would not have occurred. Plaintiffs fail to plead sufficient facts supporting the

1  allegations that Sapp's alleged inactions, even coupled with his knowledge, set in operation the
2  factors that accomplished Patton's death.

3  Finally, Plaintiffs seems to plead Ivens (a medical doctor) failed to ensure implementation
4  of up to date protocols and practices intended to prevent the spread of COVID-19. *See* ECF No. 77-
5  1 ¶ 41.[11] Ivens is also alleged to be responsible for implementing the Waiver process through which
6  detainees were supposedly "coerced" into moving housing unit. Plaintiffs provide no details
7  regarding the protocols or practices relating to intake screening, quarantine, isolation, cohorting
8  measures, personal protective equipment ("PPE") or COVID-19 testing Ivens should have and failed
9  to implement. Plaintiffs do not identify what practices were being recommended that Ivens ignored.
10 Plaintiffs do not allege that the failure to implement unidentified practices and protocols led to
11 Patton's exposure to COVID-19 and, thus, his death. In sum, Plaintiffs' allegations are insufficient
12 to state claims for negligence or wrongful death against newly named Defendant Ivens and,
13 therefore, the Court finds these claims cannot proceed as averred in the proposed first amended
14 complaint.

15 As explained above, this case is more than two years old. Discovery commenced more than
16 one year ago and is set to close on January 26, 2024. A denial without prejudice of Plaintiffs' Motion
17 for Leave to Amend would lead to another round of pleadings that will result in the further delay of
18 the close of discovery, delaying the dispositive motion deadline, and the ultimate delay of a trial
19 date. The Court finds Plaintiffs had substantial time to develop and plead sufficient facts to support
20 proximate cause of injury as a result of Smith, Koehn, Holley, Sapp, and/or Ivens' actions or
21 inactions. Plaintiffs deposed Smith, Sapp, Koehn, and Holley before the Motion to Amend was

---

[11] The Court notes that with respect to CDC guidelines and recommendations, CDC statements concerning, *inter alia*, mask wearing, social distancing, and quarantining, are advisory in nature and do not prescribe any mandatory course of conduct for BOP employees to follow. *See Castro v. United States*, Case No. 1:21-CV-02162, 2023 WL 1804869, at *8 (M.D. Pa. Feb. 7, 2023); *Sanford v. United States*, Civil Action No. 0:21-2552-RMG, 2022 WL 1210717, at *3 (D.S.C. Apr. 25, 2022) (concluding that the plaintiff's FTCA claim was barred by the discretionary function exception since the CDC's guidelines were advisory and did not mandate any particular conduct on the part of the BOP and, thus, BOP prison officials were permitted, in their discretion, to not adopt them as BOP policy). *See also Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (stating that: the CDC "[r]ecogniz[ed] challenges inherent in the detention setting[;]" that the CDC "suggest[ed] placing detainees into cohorts where social distancing is not practical[;] that "social-distancing strategies 'w[ould] need to be tailored to the individual space in the facility and the needs of the population and staff[;]'" and that "'[n]ot all strategies will be feasible in all facilities'") (quoting CDC, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities).

filed. All of the events about which Plaintiffs complain occurred before Plaintiffs filed their original Complaint. The existence and implementation of the Waiver is not alleged to be new information. That Patton signed the Waiver and was moved into the general population is also not alleged to be new information. Information specific to Ivens allegedly relatively recently disclosed (ECF No. 82) is not compelling in the absence of any argument demonstrating how such information changed the case. Further, three of the four other newly proposed defendants were known to Plaintiffs as of May 2022 (ECF No. 80) and the timing of disclosure of the fourth new defendant was not discussed by Plaintiff. ECF Nos. 77, 82. Plaintiffs' Reply does not support the inference that information supporting allegations of negligence or wrongful death against Smith, Koehn, Holley, Sapp or Ivens was unknown until recently. ECF No. 82 at 11-14.

Based on the foregoing, the Court finds Defendants meet their burden of demonstrating unreasonable delay and undue prejudice. As such, the Court finds Plaintiffs' Motion to Amend seeking to add five new defendants to the negligence and wrongful death claims should be denied.

## II. Recommendation

IT IS HEREBY RECOMMENDED that Plaintiffs Patton Family's Motion to Amend (ECF No. 77) be DENIED.

Dated this 5th day of December, 2023.

_____
ELAYNA J. YOUCHAH
U.S. MAGISTRATE JUDGE

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).