PAOLA M. ARMENI, ESQ.
Nevada Bar No. 8357
Email: parmeni@clarkhill.com
GIA M. MARINA, ESQ.
Nevada Bar No. 15276
Email: gmarina@clarkhill.com
**Clark Hill PLLC**
1700 S. Pavilion Center Dr., #500
Las Vegas, Nevada 89135
Telephone: (702) 862-8300
Facsimile: (702) 778-9709
*Attorneys for Plaintiffs, Patton Family*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ATLP, a minor, by and through his Guardian Ad Litem TAYLORIA TAYLOR; and AJB, a minor by and through his Guardian Ad Litem TAYLORIA TAYLOR and TAYLORIA TAYLOR as Co-Special Administrator of the ESTATE OF BRANDON LAVON PATTON, Deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>CORECIVIC, INC, formerly CORRECTIONS CORPORATION OF AMERICA, a foreign corporation d/b/a Nevada Southern Detention Center; DOE CORECIVIC EMPLOYEES I through XX; DOES I through X; and ROE ENTITIES I through X, inclusive,<br><br>Defendants. | CASE NO.: 2:21-cv-02072-JCM-EJY<br><br>**PLAINTFFS PATTON FAMILY'S PARTIAL OBJECTION TO MAGISTRATE JUDGE YOUCHAH'S REPORT AND RECOMMENDATION [ECF NO. 89] RE: ECF NO. 77** |

Plaintiffs, minors ATLP and AJB, through Tayloria Taylor, as Guardian Ad Litem and as Special Administrator of the Estate of Brandon Lavon Patton, deceased, by and through their counsel, Paola M. Armeni, Esq. and Gia N. Marina, Esq., of the law firm of Clark Hill PLLC, hereby submit their Partial Objection to Magistrate Judge Youchah's Report and Recommendations [ECF No. 89] denying Plaintiffs' Motion to Amend Complaint [ECF No. 77]. This Objection is brought pursuant to LR IB 3-1 and is based upon the following Memorandum of

Page 1 of 16

Points and Authorities, the exhibits attached hereto, the pleadings on file with the Court, and any additional argument of counsel the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Patton Family requests that this Court enter an Order rejecting the findings made by Magistrate Judge Youchah, [1] as delineated in Plaintiffs' Objection, as follows:

### I. The Court Erred in Finding Plaintiffs' Allegations Insufficient to State Claims for Negligence or Wrongful Death Against Newly Named Defendants.

First, the Patton Family objects to U.S. Magistrate Judge Youchah's Report and Recommendation finding Plaintiffs' Proposed Amendment of its First and Second Causes of Action Alleging Wrongful Death and Negligence Should Be Denied.[2]

As stated in Magistrate Judge Youchah's Report and Recommendation, to state a claim for wrongful death under NRS 21.085, heirs and personal representatives must allege facts sufficient to demonstrate that a death was "caused by the wrongful act or neglect of another."[3] The factual averments contained in the Patton Family's proposed First Amended Complaint sufficiently establish a causal nexus between the negligent actions of CoreCivic's employees, as detailed in the Report and Recommendation.[4] Plaintiffs analyze the allegations as pertaining to each proposed new Defendant, as follows:

#### A. Defendants Smith and Holley

A proximate cause of an injury can be said to be that which necessarily sets in operation the factors that accomplish the injury. The contributory negligence of another does not exonerate the defendant unless the other's negligence was the sole cause of injury.[5] Proximate cause has been defined as " 'any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have

---

[1] See 28 U.S.C. § 636(b)(1) (stating that the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate").

[2] See ECF No. 89, at 10.

[3] See ECF No. 89, at 10:19-21 (citing to NRS 41.085(2)).

[4] See ECF No. 89, at 10-11.

[5] Williams v. State, 50 P.3d 1116, 1125 (2002) (internal citation and quotation marks omitted).

occurred.' "[6] In Nevada, issues of negligence and proximate cause are usually factual issues to be determined by the trier of fact.[7]

As the Supreme Court of Nevada stated in *Frances v. Plaza Pac. Equities, Inc*:[8]

> There may be more than one proximate cause of an injury. When negligent conduct of two or more persons contributes concurrently as proximate causes of an injury, the conduct of each of said persons is a proximate cause of the injury regardless of the extent to which each contributes to the injury. A cause is concurrent if it was operative at the moment of injury and acted with another cause to produce the injury.

Plaintiffs' entire Complaint revolves around CoreCivic and its employees' improper and negligent actions and inactions in response to the COVID-19 pandemic, which ultimately caused the death of Brandon Patton.[9] Indeed, as contained in Plaintiffs' proposed First Amended Complaint, Plaintiffs allege, in pertinent part:

> In an effort to pressure and force high-risk detainees and inmates to move housing units so that CORECIVIC could transition the unit to a female pod, detainees and inmates were given an ultimatum: (1) sign a waiver and be moved to general population; (2) move to an open unit where they would be co-housed with protective custody detainees; or (3) go to the "hole" or solitary confinement.[10]

> High-risk detainees expressed concern about being housed with protective-custody detainees due to prison politics and stigmas which could result in physical harm from other detainees.[11]

> High-risk detainees also expressed concerns about moving to the general population **due to their high-risk medical status**.[12]

---

[6] *Taylor v. Silva,* 96 Nev. 738, 741, 615 P.2d 970, 971 (1980) (citing *Mahan v. Hafen,* 76 Nev. 220, 225, 351 P.2d 617, 620 (1960)).

[7] *Nehls v. Leonard,* 97 Nev. 325, 630 P.2d 258 (1981); *Price v. Sinnott,* 85 Nev. 600, 460 P.2d 837 (1969).

[8] 109 Nev. 91, 94, 847 P.2d 722, 724 (1993).

[9] *See* ECF No. 1.

[10] *See* ECF 77-1, at ¶ 51.

[11] *Id.* at ¶ 52.

[12] *Id.* at ¶ 53 (emphasis added).

Despite being classified as high-risk, on or about September 9, 2020, Defendant SMITH presented Brandon with an Acknowledgement and Waiver.[13]

Defendants SMITH, KOEHN, IVENS, and HOLLEY were responsible for the implementation and/or execution and/or approval of the Waivers provided to detainees when they were coerced into moving housing units.[14]

On September 9, 2020, Brandon signed the Acknowledgement and Waiver, which states, "At this time, I do not wish to move."[15]

On September 9, 2020, despite his numerous medical conditions and being classified as high-risk, Brandon was moved to general population.[16]

Defendants breached their duties when they failed to exercise a degree of care alleged herein, and specifically failed in those duties when they allowed Brandon, a vulnerable person to be placed in an environment where he contracted COVID-19.[17]

Defendants SMITH, KOEHN, IVENS, and HOLLEY were responsible for the implementation and/or execution and/or approval of the Waivers provided to detainees when they were coerced into moving housing units.[18]

Defendants' breach caused Brandon to contract COVID-19.[19]

As the direct and proximate result of Defendant' acts and/or omissions, Brandon became sick and had to be transported to the hospital…[20]

As a direct and proximate result of Defendants' negligence, Brandon died.[21]

The Report and Recommendation alleges that "Plaintiffs also do not allege that by participating in the implementation of the procedure…Patton would not have been exposed to COVID-19 resulting in his death."[22] Plaintiffs disagree.

---

[13] *Id.* at ¶ 60.

[14] *See* ECF 77-1, at ¶ 61.

[15] *Id.* at ¶ 63.

[16] *Id.* at ¶ 64.

[17] *Id.* at ¶ 80.

[18] *Id.* at ¶ 87.

[19] *Id.* at ¶ 110.

[20] *Id.* at ¶ 112.

[21] *Id.* at ¶ 90.

[22] *See* ECF No. 89, at 12:15-18.

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle her to relief.[23] In making this determination, the court takes as true all allegations of material fact stated in the complaint and construes them in the light most favorable to the plaintiff.[24] A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth."[25] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[26] "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that **requires the reviewing court to draw on its judicial experience and common sense.**"[27] Here, especially considering the crux of Plaintiffs' Complaint is for claims of negligence and wrongful death, the Court can use its common sense in finding that the alleged negligent actions of the NSDC employees set in motion the events which accomplished the injury, i.e., the death of Brandon Patton.

Defendant Smith was a nurse at NSDC. Despite knowing Mr. Patton was at high-risk for contracting COVID, Smith presented the COVID waiver to Patton. As stated in Paragraph 87, which is not cited in the Magistrate Judge's analysis of these claims, Defendant Smith (along with others) were responsible for the implementation and/or execution and/or approval of the waivers provided to detainees when they were coerced into moving housing units.[28] Detainees that were classified as high-risk for contracting the virus were concerned about signing the waiver and moving to general population due to their medical status.[29] Because Patton was coerced into signing the waiver, presented by Smith, he was moved to general population[30] where he contracted COVID-19 and later died. Thus, this Court can certainly use its common sense to infer that by

[23] *See Morley v. Walker,* 175 F.3d 756, 759 (9th Cir. 1999).

[24] *See Warshaw v. Xoma Corp.,* 74 F.3d 955, 957 (9th Cir. 1996).

[25] *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

[26] *Id.*

[27] *Id.* (emphasis added).

[28] *See* ECF No. 77-1, at ¶ 87.

[29] *Id.* at ¶ 53.

[30] *Id.* at ¶ 64

presenting the waiver to Mr. Patton, a high-risk detainee, this action "necessarily sets in operation the factors that accomplish the injury;" whereas if Mr. Patton was never presented with the aforementioned waiver, in addition to the punitive conditions implemented in order for him to sign the waiver, he would not have been moved to the general population where he was exposed to COVID-19. Thus, respectfully, the Patton Family argues that this claim is plead properly as to Defendant Smith and accordingly, she should be added as a Defendant in this lawsuit.

Defendant Holley was the Health Services Administrator at NSDC. The same argument can be applied to her, as she responsible for the implementation and/or execution and/or approval of the waivers provided to detainees when they were coerced into moving housing units.[31] Despite having the responsibility of oversight over the nurses at NSDC, Holley failed to explain, train, or otherwise discuss the Acknowledgment and Waiver with the staff before disseminating the Waiver to medical staff to, in turn, provide to detainees.[32] Thus, again, it naturally follows from a reading of the Complaint, including that Defendants' breach caused Brandon to contract COVID-19, and thereafter die, this Court can certainly use its common sense to infer that by presenting the waiver to Mr. Patton, a high-risk detainee, this action "necessarily sets in operation the factors that accomplish the injury."

### B. Defendant Koehn

The Report and Recommendation states that Plaintiffs' allegations are insufficient to state claims for negligence or wrongful death against newly named Defendant Koehn because of the "absence of facts supporting proximate causation; that is, a connection between Koehn's knowledge and the 'implementation' of the Waiver process on the one hand, and Plaintiffs' resulting injury (Patton's death) on the other hand…."[33]

Plaintiffs incorporate their argument in subsection I.(A.), *supra*. Additionally, as Warden of NSDC, Plaintiffs assert that he *knew* that detainees were being coerced into moving housing

---

[31] *See* ECF No. 77-1, at ¶ 87.

[32] *Id.* at ¶ 107.

[33] *See* ECF No. 89, at 13:15-17.

units (despite concerns over being high-risk) but he failed to act.[34] Indeed, he (and others) were responsible for the implementation and/or execution and/or approval of the waivers provided to detainees when they were coerced into moving housing units.[35] Yet, despite knowing Patton was at high-risk for contracting COVID-19, proposed Defendant Koehn failed to act. By doing so, he ratified NSDC employees' conduct.

The Report and Recommendation states that "Plaintiffs do not state that Koehn knew Patton was high risk, knew that Patton's high risk factors placed him in greater danger of death if he contracted COVID-19, knew Patton signed the Waiver, knew Patton was moved into the general population, or that Koehn failed to act…."[36] Indeed, Plaintiff's proposed First Amended Complaint alleges that Brandon was placed in general population *despite* knowing his vulnerability to COVID-19.[37] Specifically as it relates to the Waiver, not only was Koehn responsible for implementation of the Waiver,[38] but Koehn knew detainees were being coerced into moving housing units,[39] knew detainees were complaining about the pressure to move housing units,[40] and knew detainees were considered to be in restrictive housing despite no discipline being implemented.[41]

It naturally flows from that Complaint, as argued above, that these actions caused Brandon to be exposed and to contract COVID-19, which caused his death. Indeed, due to being coerced into signing the Waiver, Brandon was moved to general population where he contracted COVID-19. Plaintiffs factual averments in the proposed Amended Complaint are sufficiently detailed, as Plaintiffs detail all the information relative to Mr. Patton's death in their general allegations, with cited examples, which put into motion the reason why Patton died. Plaintiffs maintain the

---

[34] *See* ECF No. 77-1, at ¶¶ 58; 59; 85; 104.

[35] *See* ECF No. 77-1, at ¶ 87.

[36] *See* ECF No. 89, at 9-12.

[37] *See* ECF No. 77-1, at ¶ 30.

[38] *Id.* at ¶ 61.

[39] *Id.* at ¶ 54.

[40] *Id.* at ¶ 58.

[41] *Id.* at ¶ 59.

Amended Complaint sufficiently puts the proposed Defendants on notice of the actions or inactions they took which ties directly to Mr. Patton's death. Accordingly, Warden Koehn should be properly added as a Defendant in this case.

### C. Defendant Sapp

The Report and Recommendation states that Plaintiffs' allegations are insufficient to state claims for negligence or wrongful death against newly named Defendant Sapp because "Plaintiffs do not allege that without Sapp's failures injury would not have occurred."[42]

Defendant Sapp, as Chief of Unit Manager, had a duty to prevent foreseeable risks of harm, such as the heightened risk of contracting COVID-19.[43] He knew, or should have known, that failure to wear PPE equipment and cross-contamination would put Brandon at a high-risk of contracting COVID-19 due to his underlying medical conditions.[44] Indeed, when told by detainees that COVID-19 precautionary measures were not being followed, Sapp told detainees "it is what it is" and "I hope you have a good lawyer. I'll be waiting for your lawsuit. Good luck with that."[45] These issues go to standard of care, as discussed further below.

### D. Defendant Ivens

The Report and Recommendation states that Plaintiffs' allegations are insufficient to state claims for negligence or wrongful death against newly named Defendant Ivens, because Plaintiffs "provide no details regarding the protocols or practices relating to intake screening, quarantine, isolation, cohorting measures, personal protective equipment ("PPE") or COVID-19 testing Ivens should have and failed to implement. **Plaintiffs do not identify what practices were being recommended that Ivens ignored**."[46]

This case is unique in that the amount of litigation surrounding COVID-19 and responses taken in response to the pandemic are limited. This is because the COVID-19 pandemic was not

---

[42] *See* ECF No. 89, at 13:26-27.

[43] *See* ECF No. 77-1, at ¶ 98.

[44] *Id.*

[45] *Id.*

[46] *See* ECF No. 89, at 14:6-11(emphasis added).

even declared until 2020. Plaintiffs' proposed First Amended Complaint is replete with the conditions at NSDC during the COVID-19 pandemic, including a lack of social distancing and self-quarantine precautions,[47] sharing a limited number of toilets, sinks, and showers creating a greater risk of exposure to COVID-19,[48] not having soap dispensers in the bathrooms,[49] limited access to personal hygiene items such as tissues, soap, disinfectant, or hot water,[50] lacking resources necessary to engage in screening and testing,[51] placement of asymptomatic new arrival detainees into the existing population,[52] not properly using/wearing masks,[53] cross-contamination,[54] and so forth. While the Magistrate Judge "notes that with respect to CDC guidelines and recommendations, CDC statements concerning, *inter alia*, mask wearing, social distancing, and quarantining, are advisory in nature and do not prescribe any mandatory course of conduct for BOP employees to follow," these issues all go to standard of care and whether, in his capacity as a Chief Medical Officer, Ivens failed to exercise "that degree of care in a given situation which a reasonable man under similar circumstances would exercise."[55] Indeed, in *Van Horn v. Hornbeak,*[56] a wrongful death case, the parties' differed over standard of care and whether the CDC guidelines were the applicable standard of care or whether the CDC guidelines are the *minimum* standard of care in a wrongful death case.[57] The Court found that the dispute over the standard of care raises a genuine issue of fact which precludes summary judgment.[58] Thus, while

---

[47] *See* ECF No. 77-1, at ¶ 31.

[48] *Id.* at ¶ 32.

[49] *Id.*

[50] *Id.* at ¶ 33.

[51] *Id.* at ¶ 35.

[52] *Id.* at ¶ 36.

[53] *Id.* at ¶ 37.

[54] *Id.* at ¶ 38

[55] *Sims v. Gen. Tel. & Elecs.*, 107 Nev. 516, 522, 815 P.2d 151, 155 (1991), *overruled in part by Tucker v. Action Equip. & Scaffold Co., Inc.*, 113 Nev. 1349, 951 P.2d 1027 (1997).

[56] *Van Horn v. Hornbeak*, CV F081622LJODLB, 2010 WL 599885 (E.D. Cal. Feb. 18, 2010).

[57] *Id.* at *8.

[58] *Id.*

CDC guidelines and recommendations may have not been mandatory for BOP employees to follow, they were the only guidance available to understand the virus and recommend interventions used to control infectious disease transmission. And it necessarily follows from a reading of the Complaint as a whole that failure to implement these standards, along with coercing Patton into signing a waiver placing him into the general population, caused him to contract COVID-19, which ultimately caused his death. The Patton Family has sufficiently alleged that Dr. Ivens failed to ensure the protocols detailed throughout their Complaint were implemented to prevent the spread of COVID-19. Thus, Plaintiffs' claim should be allowed to proceed against him accordingly.

**II.     The Court Erred in Finding that Defendants Met Their Burden of Demonstrated Unreasonable Delay and Undue Prejudice.**

In analyzing whether Defendants met their burden of demonstrating unreasonable delay and undue prejudice, the Report and Recommendation focuses on the timeline when Plaintiffs became aware of the Defendants they now seek to add to their Complaint. Further, the Magistrate Judge focuses on Plaintiffs' diligence in adding these parties.

As stated in Plaintiffs' Reply in Support of Motion to Amend Complaint,[59] it is the Defendant's action that have prolonged this case and stymied discovery efforts.[60] The docket in this case illustrates only a small portion of the discovery issues that this case has presented, which includes The Patton Family's Motion to Compel,[61] Motion to Disqualify Counsel,[62] Motion for Protective Order Related to Deposition of Minor Child,[63] CoreCivic's Motion to Compel,[64] and CoreCivic's Second Motion to Compel. Further, these issues have been brought to the Court's attention through each of Plaintiffs' requests for extension of discovery. For instance, the parties'

---

[59] *See* ECF No. 82.

[60] *Id.* at 5-6.

[61] *See* ECF No. 40.

[62] *See* ECF No. 41.

[63] *See* ECF No. 54.

[64] *See* ECF No. 60.

Stipulation and Order to Extend Discovery Deadlines (Fifth Request), filed on July 17, 2023,[65] includes the following relevant factual averments necessitating more time for the discovery period:

- On September 8, 2022, Plaintiffs served Defendant with a letter requesting that they supplement its response to Interrogatory No. 5.[66]

- On October 17, 2022, Defendant served Plaintiffs with a letter regarding deficiencies in their responses to Defendant CoreCivic's First Set of Interrogatories, First Set of Requests for Admissions, and First Set of Requests for Production of Documents.[67]

- On December 7, 2022, there was a meet and confer on Defendants' discovery responses.[68]

- On December 23, 2022, Plaintiffs' counsel emailed out of state defense counsel and explained why they believed that the privilege log was again improper. They requested a meet and confer the following week. A meet and confer was set for January 5, 2023.[69]

Further, the parties advised that there were still outstanding responses to subpoenas, including from the United States Marshals Task Force Officer for records and the IRS for Mr. Patton's tax records.[70] Additionally, although a Stipulation for Entry of Protective Order was entered on August 4, 2022,[71] Defendants did not provide unredacted versions of the documents it disclosed prior to entry of the protective order until recently, on or about September 25, 2023.[72]

As this Court is aware, the identity of a Defendant is important, but to move to amend a Complaint, there need to be sufficient facts as to that Defendant. In this case, as demonstrated above, Plaintiffs have had to cull information together to ensure the proper addition of each proposed Defendant. Indeed, while Plaintiffs may have known of the "identity" of proposed

---

[65] *See* ECF No. 73.

[66] *See* ECF No. 73, at 3:24-25.

[67] *Id.* at 4:2-4.

[68] *Id.* at 4:11.

[69] *Id.* at 5:22-24.

[70] *Id.* at 6:27-28; 8:4-6; 8:22-26; 9:1-7.

[71] *See* ECF No. 32.

[72] *See* Declaration of Paola M. Armeni, Esq.

Defendants Smith, Holley, and Koehn as of May 2022, Plaintiffs did not depose them until March 27, 2023, April 18, 2023 and June 29, 2023. respectively. Deposing these witnesses was not enough, as their answers appeared to avoid outcome determinative questions. For example, the deposition of proposed Defendant Holley yielded a feigned cloudy memory to which she could not directly answer questions relative to her knowledge in this lawsuit.[73] The deposition of proposed Defendant Smith fared no better.[74] As to proposed Defendant Sapp, despite Plaintiffs deposing him on March 6, 2023, with only the knowledge that he had been copied on and sent a handful of email communications, he was not disclosed as a witness with personal knowledge of the underlying action until July 21, 2023.[75] Similarly, as stated in Plaintiffs' briefing on their Motion to Amend Complaint, CoreCivic did not disclose Dr. Ivens as a witness until July 21, 2023.[76]

As such, Plaintiffs were forced to compare relevant discovery to the employees' duties and responsibilities they had in each position, as well as sifting through thousands of pages of discovery, to put two and two together to prove Plaintiffs' position. It is clear from the above summary that Plaintiffs have been diligent in prosecuting this case. Defendant's tactics in avoiding disclosure of pertinent material, resulting in various discovery motions filed with the Court, should not be rewarded. Indeed, as Plaintiffs already deposed these individuals, there would not be a

---

[73] *See e.g.* **Exhibit 1**, Deposition of Bonnie Holley, at 89:2-6 (Counsel inquiring whether she gave any instruction to her medical staff with the COVID Waiver, to which she could not recall); *Id.* at 90:19-21 (Counsel inquiring whether she as HAS ever received incident statements, to which she could not recall); *Id.* at 93:14-17 (Counsel inquiring what type of information she had to complete for the M&M, to which she could not recall); *Id.* at 96:5-9 (Counsel inquiring whether the medical progress note would indicate that Patton had not been seen by medical from 9/3/2020 to 9/9/2020, to which she could not recall); *Id.* at 99:12-16 (Counsel inquiring as to the purpose of her receiving a document regarding movement of inmates and detainees, to which she could not recall.).

[74] *See e.g.* **Exhibit 2**, Deposition of Rebecca Smith, at 38:7-11 (Counsel inquiring whether she as nurse would go to a housing unit to speak to an inmate or detainee, to which she could not recall what was done during COVID and prior to COVID); *Id.* at 39:7-10 (Counsel inquiring whether she received any kind of medical grievance from Patton, to which she could not recall); *Id.* at 52-53:22-4 (Counsel inquiring whether surveillance and infection control was implemented at NSDC, to which she could not recall); *Id.* at 61:20-25 (Counsel inquiring what type of masks medical stuff were utilizing, to which she could not recall); *Id.* at 69:16-21 (Counsel inquiring whether any of the housing pods were designated high risk during COVID, to which she could not recall).

[75] *See* Exhibit 82-2, Defendant's Seventh Supplemental Disclosures.

[76] *See* ECF No. 82, at 6:1-13.

significant delay in proceedings if Plaintiffs were allowed to add them as Defendants in this case, thus, diminishing Defendant's argument as to prejudice.

Finally, to note, Plaintiffs filed their Motion to Amend Complaint on July 26, 2023.[77] At the time of filing, as stated in Plaintiffs' Motion to Amend, the deadline for the close of discovery was not until December 26, 2023.[78] In the Report and Recommendation, Magistrate Judge Youchah notes that the close of discovery is now scheduled to close on January 26, 2024.[79] However, the timing of the Court's Order on this Motion should not be construed against Plaintiffs. Indeed, at the time of filing the Motion to Amend, five months remaining in discovery most certainly would have been sufficient time to complete discovery on the newly added Defendants.

Accordingly, this Court should find that Plaintiffs were diligent in their efforts to move to amend their Complaint, there was no unreasonable delay, and the prejudice that would result to Defendant, if any, is substantially outweighed by proceeding in this matter on the merits against all the negligent Defendants.

## III.   CONCLUSION

Based on the foregoing, the Court should grant Plaintiffs leave to amend the Complaint and file the FAC for the purpose of adding Smith, Holley, Sapp, Koehn, and Ivens as Defendants in this action.

DATED this 19th day of December 2023.

**CLARK HILL PLLC**

By ___/s/ Paola M. Armeni, Esq.___
PAOLA M. ARMENI, ESQ.
Nevada Bar No. 8537
GIA M. MARINA, ESQ.
Nevada Bar No. 15276
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135

Attorneys for Plaintiffs, Patton Family

---

[77] *See* ECF No. 87.

[78] *See* ECF No. 77, at 5:13.

[79] *See* ECF No. 89, at 14:16.

## DECLARATION OF PAOLA M. ARMENI, ESQ. IN SUPPORT OF OBJECTION TO MAGISTRATE JUDGE YOUCHAH'S REPORT AND RECOMMENDATION

I, Paola M. Armeni, Esq., declare under penalty of perjury of the laws of the State of Nevada[80] and United States of America[81] that the following in true and correct.

1.      I am an attorney with the law firm of Clark Hill PLLC, counsel for Plaintiffs, Patton Family, in this case entitled *Estate of Brandon Patton v. CoreCivic, Inc., et Al.,* Case Number 2:21-cv-02072-JCM-EJY.

2.      I am over 21 years of age.  The factual statements made herein are within my personal knowledge and are true and correct.  If called upon to testify about these matters, I could competently testify to them.

3.      I have personal knowledge of the facts set forth herein, except as to those matters set forth based upon information and belief, and as to those matters, I believe them to be true and correct.  If called upon to testify about these matters, I could truthfully testify to the facts set forth herein.

4.      This Declaration is made pursuant in support of the Patton Family's Objection to Magistrate Judge Youchah's Report and Recommendation.

5.      A Stipulation for Entry of Protective Order was entered on August 4, 2022 in this matter at the request of Defendant CoreCivic.

6.      A substantial amount of discovery served by Defendant in this case has been redacted, claiming different privileges, including for "relevance."

7.      By September 8, 2023, despite a Protective Order being in place and counsels' various meet and confers over discovery issues, Plaintiffs had not received any unredacted versions of these documents. Accordingly, on September 8, 2023, I drafted and sent a letter to defense counsel regarding the vast amount of documents produced in this case with substantial redactions.

8.      This prompted an initial response from CoreCivic, disclosing *some* documents requested on or about September 25, 2023.

---

[80] *See* NRS 53.045.

[81] 28 U.S.C. § 1746(2).

9.    On November 20, 2023, Plaintiffs served an additional letter to defense counsel regarding the unredacted documents that were still being withheld.

10.    On December 12, 2023, defense counsel responded to my letter, disclosing additional documents, although still not all of the documents requested.

11.    This case has presented multiple hurdles necessitating the filing of several discovery motions, including Motions to Compel and a Motion for Protective Order for the Deposition of a Minor.

12.    Defense counsel and Plaintiffs' counsel have attended several meet and confers throughout this case regarding various discovery disputes. Those disputes are ongoing, as evidenced by the letter correspondences referenced above.

13.    This Objection is not for purposes of delay.

DATED this 19th day of December, 2023.

 /s/ Paola M. Armeni, Esq.
PAOLA M. ARMENI, ESQ.

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that on this 19th day of December 2023, I caused a true and correct copy of the above and to be served via the Court's CM/ECF system, on all parties currently on the electronic service list.


                        */s/ Tanya Bain*
                        An Employee of Clark Hill PLLC