Ashlee B. Hesman
Nevada Bar No. 012740
Kristina R. Rood
Arizona Bar No. 035097 (admitted pro hac vice)
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Tel.:  (480) 420-1600
Fax:  (480) 420-1695
ahesman@strucklove.com
krood@strucklove.com

Gina G. Winspear
Nevada Bar No. 005552
DENNETT WINSPEAR, LLP
3301 North Buffalo Drive, Suite 195
Las Vegas, Nevada 89129
Tel.: (702) 839-1100
Fax: (702) 839-1113
GWinspear@dennettwinspear.com

*Attorneys for Defendant CoreCivic*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ATLP, a minor, by and through his Guardian Ad Litem Tayloria Taylor; and AJB, a minor, by and through his Guardian Ad Litem Tayloria Taylor, and Tayloria Taylor as Co-Special Administrator of the Estate of Brandon Lavon Patton, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>CoreCivic, Inc., formerly Corrections Corporation of America, a foreign corporation d/b/a Nevada Southern Detention Center; Doe CoreCivic Employees I through XX; Does I through X; and Roe Entities I through X, inclusive,<br><br>Defendants. | Case No. 2:21-cv-02072-JCM-EJY<br><br>**CORECIVIC'S RESPONSE TO PLAINTIFFS' PARTIAL OBJECTION TO MAGISTRATE JUDGE YOUCHAH'S REPORT AND RECOMMENDATION** |

The Court should overrule Plaintiffs' Partial Objection to Magistrate Judge Youchah's Report and Recommendation ("Partial Objection"), as Plaintiffs' objections are not specific and amount to a mere disagreement with Magistrate Judge Youchah's Report and

Recommendation ("R&R"), and adopt the R&R in its entirety because Magistrate Judge Youchah properly recommended that Plaintiffs' Motion to Amend be denied. (Dkt. 89.)

## I.    Relevant Procedural History

On July 26, 2023, Plaintiffs filed a Motion to Amend Complaint to add former Warden Koehn, former Health Services Administrator ("HSA") Holley, former Chief of Unit Management ("COUM") Sapp, Registered Nurse ("RN") Smith, and Dr. Keith Ivens as Defendants and a negligent training and supervision claim. (Dkt. 77 at 5.) CoreCivic filed its opposition on August 16, 2023. (Dkt. 80.) Plaintiffs filed their Reply on September 7, 2023. (Dkt. 82.)

On December 5, 2023, Magistrate Judge Youchah issued an R&R, recommending that the Court deny Plaintiffs' Motion to Amend Complaint and finding, *inter alia*, that Plaintiffs' attempt to include all Plaintiffs in their repleaded negligent and supervision claim was futile (as not all Plaintiffs have standing to bring that claim (*see* Dkt. 14 at 5)); that they failed to state a claim for negligent training and supervision; that they failed to state a claim against Warden Koehn, HSA Holley, COUM Sapp, RN Smith, and Dr. Ivens for wrongful death/negligence; and that CoreCivic met its burden of showing undue delay and prejudice if amendment was permitted at this late juncture. (Dkt. 89 at 15.) Plaintiffs filed their Partial Objection on December 19, 2023. (Dkt. 91.) Plaintiffs did not object to Magistrate Judge Youchah's recommendation to Plaintiffs' attempt to include all Plaintiffs in their repleaded negligent and supervision claim and failure to state a claim for negligence training and supervision. (*Id.*) Plaintiffs objected only to Magistrate Judge Youchah's recommendation that they failed to state a claim against Warden Koehn, HSA Holley, COUM Sapp, RN Smith, and Dr. Ivens for wrongful death/negligence and that CoreCivic met its burden of showing undue delay and prejudice. (*Id.* at 2–13.)

## II.    The Court Should Adopt Magistrate Judge Youchah's R&R in its Entirety.

The Federal Magistrates Act governs the jurisdiction and authority of federal magistrates. *See* 28 U.S.C. § 636. "The Act provides that certain matters (for example, non-

dispositive pretrial matters) may be referred to a magistrate judge for decision, while certain other matters (such as case-dispositive motions, petitions for writs of habeas corpus) may be referred only for evidentiary hearing, proposed findings, and recommendations." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1118 (9th Cir. 2003). Any party may raise objections to a magistrate judge's report and recommendation, but the objections must be "specific," "written," and submitted "[w]ithin 14 days after being served with a copy of the recommended disposition." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2); LR IB 3-2.

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

28 U.S.C. § 636(b)(1)(C).

As an initial matter, Plaintiffs' Partial Objection does not set forth specific objections and is therefore tantamount to making no objection at all. *See* Fed. R. Civ. P. 72(b)(2) (stating objections must be specific). In fact, Plaintiffs' Partial Objection is nothing more than a disagreement with Magistrate Judge's R&R, which is improper. The Court should overrule Plaintiffs' objections and adopt the R&R.

**A.    The Court Should Adopt the R&R as to Plaintiffs' Wrongful Death/Negligence Claim.**

Magistrate Judge Youchah found that Plaintiffs' wrongful death/negligence claim fails as to Warden Koehn, HSA Holley, COUM Sapp, RN Smith, and Dr. Ivens because Plaintiffs failed to plead that they proximately caused Decedent's injury and subsequent death. (Dkt. 89 at 12–15.) Plaintiffs "disagree" and state that their "entire Complaint revolves around CoreCivic and its employees' improper and negligent actions in response to the COVID-19 pandemic, which ultimately caused" Decedent's death. (Dkt. 91 at 3.) Plaintiffs misunderstand, however, that the proposed FAC fails to plead a causal connection between any CoreCivic employees' alleged wrongful conduct and Decedent's death. While the proposed FAC includes a conclusory allegation that "Defendants' breach caused [Decedent]

3

to contract COVID-19," (*see* Dkt. 77-1 at ¶ 110), the proposed FAC is devoid of any factual allegations to support that legal conclusion.

Because the proposed FAC is devoid of such allegations, Plaintiffs argue that "the Court can use its common sense in finding that the alleged negligent actions of the NSDC employees set in motion the events which accomplished the injury, i.e., the death of [Decedent]." (Dkt. 91 at 5.) Plaintiffs fail to cite any legal authority to support their proposition that, in the absence of such factual underpinnings showing a causal connection, the Court can use its "common sense" to read non-existent allegations into the proposed FAC.[1] While a court can "draw on its judicial experience and common sense" to determine whether a complaint states a plausible claim for relief, a complaint must actually contain sufficient factual allegations to allow the court to make that determination. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As Magistrate Youchah's R&R found, the proposed FAC fails to do so.

### 1. Plaintiffs Fail to State a Claim Against RN Smith.

Magistrate Judge Youchah found that Plaintiffs failed to state a wrongful death/negligence claim against RN Smith because Plaintiffs failed to connect her alleged actions (or omissions) to Decedent's injury and death. (Dkt. 89 at 12.) Specifically, Magistrate Judge Youchah found that, while Plaintiffs allege that RN Smith provided Decedent a COVID-19 waiver, they fail to allege that this resulted in Decedent's exposure to COVID-19. (*Id.*) She also determined that Plaintiffs failed to allege that RN Smith's alleged implementation of (and/or participation in the implementation of) the COVID-19 waiver caused Decedent's COVID-19 exposure. (*Id.*)

Plaintiffs assert in their Partial Objection that the proposed FAC states a claim because, "[d]espite knowing that [Decedent] was at high-risk for contracting COVID, [RN]

---

[1] Moreover, Plaintiffs' assertion that the Court can use "common sense" to find that they pled a wrongful death/negligence claim implies that common sense was not used in issuing the R&R, which is inappropriate and unsupported by the record, especially where Magistrate Judge Youchah set forth numerous allegations that she relied on in ruling on Plaintiffs' Motion to Amend and set forth a 15-page, well-reasoned R&R to support her recommendations.

Smith presented the COVID waiver to" him, RN Smith was responsible for "the implementation and/or execution and/or approval of the waivers provided to detainees when they were coerced into moving housing units," and "[b]ecause [Decedent] was coerced into signing the waiver, presented by Smith, he was moved to general population where he contracted COVID-19 and later died." (Dkt. 91 at 5.) Plaintiffs therefore conclude that "this claim is plead [sic] properly as to [RN] Smith." (*Id.* at 6.)

As Magistrate Judge Youchah's R&R explained, these allegations do not show that RN Smith's conduct "set[] in operation the factors that accomplish the injury." *Williams v. State*, 50 P.3d 1116, 1125 (Nev. 2002). The allegations that Plaintiffs cite do not connect RN Smith's conduct—i.e., handing Decedent a COVID-19 waiver—to Decedent's injury. Although Plaintiffs double down on the allegation that Decedent was "coerced" into signing the COVID-19 waiver, Plaintiffs do not allege that RN Smith coerced him into signing the COVID-19 waiver and that this claimed coercion caused his exposure to COVID-19. Plaintiffs' allegations against RN Smith are too attenuated to state a plausible claim for relief, and the Court should adopt the R&R as to RN Smith.

**2.      Plaintiffs Fail to State a Claim Against HSA Holley.**

Magistrate Judge Youchah found that, although Plaintiffs alleged that HSA Holley "participated in implementing the procedure about which Plaintiffs complain (how she did so or what she did is not alleged) and she did not explain, train[,] or discuss the [w]aiver with staff who distributed the [w]aiver to detainees," Plaintiffs fail to allege how those actions and/or failures caused Decedent's death. (Dkt. 89 at 12.) Plaintiffs' Partial Objection argues that the proposed FAC alleged that HSA Holley was "responsible for the implementation and/or execution and/or approval of the waivers provided to detainees when they were coerced into moving housing units," and that, despite overseeing nursing staff at NSDC, she "failed to explain, train, or otherwise discuss the Acknowledgement and Waiver with the staff before disseminating [it] to medical staff…." (Dkt. 91 at 6.) This disagreement is unpersuasive. Aside from restating the allegations that Magistrate Judge Youchah analyzed in ruling on

Plaintiffs' Motion to Amend, Plaintiffs fail to cite any allegations in the proposed FAC that show that HSA Holley's actions and/or failures caused Decedent's death. Nor can they, as the proposed FAC does not contain any factual underpinnings showing that HSA Holley's implementation of the COVID-19 waiver and/or failure to train staff on the waiver caused Decedent to be exposed to COVID-19. Instead, Plaintiffs assert that "it naturally follows from a reading of the Complaint … that by presenting the waiver to Mr. Patton, a high-risk detainee, this action 'necessarily sets in operation the factors that accomplish the injury.'" (Dkt. 91 at 6.) This is too great a leap in logic. Plaintiffs are missing numerous allegations that connect the dots between HSA Holley's alleged implementation of and failure to train staff on the COVID-19 waiver and Decedent's exposure to COVID-19 and subsequent death. The Court should therefore adopt Magistrate Judge Youchah's recommendation as to HSA Holley.

**3.      Plaintiffs Fail to State a Claim Against Warden Koehn.**

Magistrate Judge Youchah found that Plaintiffs failed to state a claim against Warden Koehn because, although they allege that he assisted in implementing the COVID-19 waiver, knew that detainees were being coerced into moving to general population because they weren't provided as many privileges in restrictive housing, and knew detainees were complaining regarding  the alleged pressure to move; Plaintiffs failed to plead a casual nexus between that alleged knowledge and Decedent's death. (Dkt. 89 at 13.) Specifically, Magistrate Judge Youchah found that the proposed FAC failed to allege that Warden Koehn knew Decedent was high risk, Decedent's high-risk factors placed him in greater danger of death if he contracted COVID-19, knew Decedent signed the COVID-19 waiver, knew Decedent was moved to general population, and that Warden Koehn failed to act despite the above non-existent allegations. (*Id.*)

In response, Plaintiffs assert in their Partial Objection that the proposed FAC alleges the missing knowledge described above. (Dkt. 91 at 7.) Specifically, Plaintiffs assert that the proposed FAC alleges that Decedent was "placed in general population despite knowing his vulnerability to COVID-19"; Warden Koehn "knew detainees were being coerced into

moving housing units, knew detainees were complaining about the pressure to move housing units, and knew detainees were considered to be in restrictive housing despite no discipline being implemented." (*Id.*) Plaintiffs miss the point. None of these allegations satisfy the requisite information Magistrate Judge Youchah found to be missing from the proposed FAC. That is, none of the allegations allege that **Warden Koehn** knew that **Decedent** was high risk, Decedent's high-risk factors exposed him to a greater risk of death from COVID-19 exposure, Decedent signed the COVID-19 waiver, Decedent moved to general population, and that Warden Koehn failed to act in the face of that knowledge. Rather, the proposed FAC alleges only that it was **known**, generally (not by Warden Koehn, specifically), that **detainees**, generally, (not Decedent, specifically) were coerced into moving housing units.[2] (*See, e.g.,* Dkt. 77-1 at ¶¶ 54 ("Defendant KOEHN, knew that detainees were being coerced into moving housing units, but failed to act."), 58 ("Defendant KOEHN, as Warden, knew detainees and inmates were complaining about the pressure to move housing units and failed to act.").) Warden Koehn's knowledge as to other detainees is irrelevant. Without any factual allegation that Warden Koehn knew information that ultimately led to Decedent's, not other detainees', injury, Plaintiffs cannot state a plausible claim against Warden Koehn.

Plaintiffs have conducted significant discovery in this matter, including deposing Warden Koehn. If they had evidence to state a plausible claim against Warden Koehn, they would have pled it, but they did not. This is because they cannot. The Court should therefore adopt the R&R as to the claim against Warden Koehn.

### 4. Plaintiffs Fail to State a Claim Against COUM Sapp.

Like RN Smith, HSA Holley, and Warden Koehn, Magistrate Judge Youchah found that Plaintiffs failed to plead a causal connection between COUM Sapp's actions (and/or inactions) and Decedent's death. (Dkt. 89 at 13.) Although COUM Sapp is alleged to have supervised CoreCivic staff who allegedly moved between quarantined and non-quarantined

---

[2] Much of the proposed FAC is drafted in the passive voice, making it virtually impossible to discern who is alleged to have done what to whom and/or to have known what about whom. (*See, e.g.,* Dkt. 77-1 at ¶ 30 ("Brandon was placed in general population despite knowing his vulnerability to COVID-19.").)

units and/or failed to wear personal protective equipment ("PPE"), knew that staff were not following COVID-19 protocols to prevent cross-contamination, and knew or should have known detainees were being coerced into signing COVID-19 waivers, Magistrate Judge Youchah found that Plaintiffs failed to allege that COUM Sapp's failure to act despite that knowledge caused Decedent's injury. (*Id.*) The R&R adds: "Plaintiffs fail to plead **sufficient facts supporting the allegations** that Sapp's alleged inactions, even coupled with his knowledge, set in operation the factors that accomplished [Decedent's] injury." (*Id.* at 13–14 (emphasis added).)

Plaintiffs rely on one allegation from the proposed FAC in an attempt to rebut this: "Defendant SAPP knew or should have known that failure to wear PPE equipment and cross-contamination would put [Decedent] at high-risk of contracting COVID-19 due to his underlying medical conditions." (Dkt. 91 at 8 (citing Dkt. 77-1 at ¶ 98).)[3] This, however, is nothing more than a conclusory allegation and supports Magistrate Judge Youchah's finding that the proposed FAC is devoid of factual underpinnings to support Plaintiffs' allegation that COUM Sapp knew that his inactions put Decedent at high risk for contracting COVID-19. Indeed, Plaintiffs fail to allege **how** COUM Sapp allegedly knew or should have known this information. For example, they fail to allege that COUM Sapp knew Decedent was high risk, knew that CoreCivic staff failed to wear PPE in the housing units where Decedent was housed, and knew that exposure to staff who failed to wear PPE placed Decedent (a high-risk detainee) at a greater risk of death from COVID-19. (*See generally* Dkt. 77-1.) Because the proposed FAC provides none of these allegations, the Court should adopt the R&R as to COUM Sapp.

### 5.    Plaintiffs Fail to State a Claim Against Dr. Ivens.

Plaintiffs' allegations against Dr. Ivens, like the other newly added Defendants, also fail to plausibly state a claim for relief. Magistrate Judge Youchah found that Plaintiffs

---

[3] Plaintiffs also rely on COUM Sapp's alleged statement that he hopes detainees "have a good lawyer. [He'll] be waiting for [their] lawsuit. Good luck with that," which he allegedly made concerning COVID-19 protocols. (Dkt. 91 at 8 (citing Dkt. 77-1 at ¶ 43).) That statement does nothing to connect COUM Sapp's alleged knowledge of CoreCivic staff's failure to wear PPE and Decedent's injury, and Plaintiffs make no effort to show otherwise.

"seem[] to plead [Dr.] Ivens (a medical doctor) failed to ensure implementation of up to date protocols and practices intended to prevent the spread of COVID-19" and that Dr. Ivens was "responsible for implementing the [w]aiver process through which detainees were supposedly 'coerced' into moving housing units." (Dkt. 89 at 14.) However, she found that Plaintiffs failed to provide "details regarding the protocols or practices relating to intake screening, quarantine, isolation, cohorting measures, [PPE], or COVID-19 testing [Dr.] Ivens should have and failed to implement"; do not identify what practices were being recommended that [Dr.] Ivens ignored"; and "do not allege that the failure to implement unidentified practices and protocols led to [Decedent's] exposure to COVID-19 and, thus, his death." (*Id.*)

Plaintiffs assert in their Partial Objection that:

> Plaintiffs' proposed [FAC] is replete with the conditions at NSDC during the COVID-19 pandemic, including a lack of social distancing and self-quarantine precautions, sharing a limited number of toilets, sinks, and showers creating a greater risk of exposure to COVID-19, not having soap dispensers in the bathrooms, limited access to personal hygiene items such as tissues, soap, disinfectant, or hot water, lacking resources necessary to engage in screening and testing, placement of asymptomatic new arrival detainees into the existing population, not properly using/wearing masks, cross-contamination, and so forth.

(Dkt. 91 at 9.) Plaintiffs add that these issues bear on the standard of care, not causation, and that they "sufficiently alleged that Dr. Ivens failed to ensure the protocols detailed throughout their [proposed FAC] were implemented to prevent the spread of COVID-19." (*Id.* at 9–10.)

Plaintiffs misunderstand the R&R. While they include a laundry list of alleged conditions at NSDC in their proposed FAC, they did not delineate any "protocols or practices" that Dr. Ivens should have and allegedly failed to implement. (*See, e.g.,* Dkt. 77-1 at ¶¶ 40–41.) Nor do they tie the alleged conditions at NSDC to them. Moreover, and contrary to Plaintiffs' assertion, the above issues bear on causation because Plaintiffs fail to include a casual nexus between any action/inaction by Dr. Ivens and Decedent's injury. For example, even if Dr. Ivens failed to implement certain protocols and practices (he did not), that is irrelevant if his failure did not cause Decedent's injury. That is, without allegations that, for

9

example, Dr. Ivens failed to implement CDC protocols at NSDC concerning masking, staff at NSDC failed to wear masks in the housing unit where Decedent was housed, and Decedent was exposed to COVID-19 because of staff's lack of masking; Plaintiffs cannot connect the dots between Dr. Ivens' alleged failures and Decedent's injury. The Court should therefore adopt the R&R as to Dr. Ivens because Plaintiffs' allegations against him are too attenuated to state a plausible claim for relief.

**B.      The Court Should Adopt the R&R as to Magistrate Judge Youchah's Finding that CoreCivic Met its Burden As to Undue Delay and Prejudice.**

**1.      Plaintiffs Unduly Delayed Bringing Their Claims Against Warden Koehn, HSA Holley, COUM Sapp, RN Smith, and Dr. Ivens.**

Plaintiffs' attempt to rebut Magistrate Judge Youchah's finding that CoreCivic demonstrated undue delay by blaming CoreCivic is unpersuasive. (Dkt. 91 at 10.) Specifically, Plaintiffs assert that it is CoreCivic's "action [sic] that have prolonged this case and stymied discovery efforts," citing numerous discovery motions, including a Motion to Disqualify Counsel and Motion for Protective Order Related to Deposition of Minor Child. (*Id.*) That both sides filed motions regarding discovery—something that is commonplace in litigation—is irrelevant, particularly where Plaintiffs fail to connect such filings to their unnecessary delay.[4] For example, Plaintiffs do not assert that any of the discovery motions prevented them from discovering the identity of the Defendants they sought to add or prevented them from moving to amend their Complaint to add them.

Plaintiffs also assert that they were required to "cull" information to support their claims against Warden Koehn, HSA Holley, COUM Sapp, RN Smith, and Dr. Ivens. (*Id.* at 11–12.) Adding that, while they knew of RN Smith's, HSA Holley's, and Warden Koehn's identities as of May 2022, they did not depose them until March 27, 2023, April 18, 2023, and June 23, 2023, respectively. (*Id.* at 12.) To justify their unnecessary delay in seeking to

[4] To illustrate, Plaintiffs elected to spend their time moving to disqualify Defense counsel on bizarre grounds, rather than prosecuting the merits of their claims. (Dkt. 40.) That motion was denied. (Dkt. 68.) Indeed, their delays resulted in Plaintiffs requesting four extensions of the Scheduling Order deadlines, totaling approximately 1.5 years of delays in the case's resolution. (Dkts. 29 (moving to extend the original discovery deadline of July 19, 2022); 39; 64; 71; 87 (granting request to extend discovery deadline to January 26, 2024).)

amend their complaint to add them, Plaintiffs argue without explanation or support that their depositions were not "enough" to add them as Defendants because RN Smith, HSA Holley, and Warden Koehn "feign[ed] cloudy memor[ies]" and their "answers avoided outcome determinative questions." (*Id.*) That these witnesses could not recall every detail Plaintiffs requested, from events that occurred over three years ago, is of no consequence.[5] If anything, it shows their lack of involvement, which further supports denying Plaintiffs the ability to haphazardly add them as Defendants.

As to COUM Sapp, Plaintiffs assert that despite deposing him on March 6, 2023, CoreCivic did not disclose him as a fact witness on their disclosure statement until July 21, 2023. (*Id.*) CoreCivic is not required to list an individual as a fact witness on their disclosure statement for Plaintiffs to sue them. The fact is, Plaintiffs were aware of COUM Sapp before March 2023, which is why they decided to depose him, and knew what information he possessed as of his deposition, but waited until July 26, 2023 to seek to add him as a Defendant.  Plaintiff's attempt to justify their delay fails.

Last, and as to Dr. Ivens, Magistrate Judge Youchah found that the "[i]nformation specific to [Dr.] Ivens allegedly relatively recently disclosed (ECF No. 82) is not compelling in the absence of any argument demonstrating how such information changed the case." (Dkt. 89 at 15.) Instead of articulating how any information specific to Dr. Ivens changed the case, Plaintiffs repeat the argument in their Motion to Amend, which Magistrate Judge Youchah rejected, that CoreCivic did not disclose Dr. Ivens as a witness until July 21, 2023, and thus, they could not have added him as a Defendant prior to that date. (Dkt. 91 at 12.) This excuse fails, as Plaintiffs were aware of Dr. Ivens identity as early as October 2022, when CoreCivic produced emails that referred to him. (Dkts. 80 at 10; 82-6 at 2–4, 6–10.) If Plaintiffs wanted to discover more information about Dr. Ivens, they could have asked other deponents about

---

[5] Although Plaintiffs complain that these individuals' "cloudy memor[ies]" prevented them from adding them as Defendants earlier, Plaintiffs' experts rely on them to support their opinions, which is telling. (*See* Exhibit 1, Excerpt of Dr. Herrington's Expert Report, dated Nov. 27, 2023, at 15.)  Moreover, despite that these individuals' depositions were supposedly not "enough," to add them as Defendants, Plaintiffs fail to identify the moment where the information allegedly "clicked" to add them as Defendants. (*See id.*)

him, propounded discovery, or deposed him; but they did not.[6]

In a final attempt to show that they did not delay adding Warden Koehn, HSA Holley, COUM Sapp, RN Smith, and Dr. Ivens as Defendants, Plaintiffs assert that "Plaintiffs were forced to compare relevant discovery to the employees' duties and responsibilities they had in each position, as well as **sifting through thousands of pages of discovery**, to put two and two together to prove Plaintiffs' position." (Dkt. 91 at 12 (emphasis added).) Plaintiffs cannot have it both ways. They cannot claim that they could not add these Defendants earlier because CoreCivic "stymied" discovery and avoided "disclosure of pertinent materials" but also that Defendants produced so much discovery—specifically, "thousands of pages of discovery"— that prevented them from discovering information to support their claims.

The fact is that Plaintiffs were not diligent in moving to amend their Complaint (and, indeed, unduly delayed doing so) to add Warden Koehn, HSA Holley, COUM Sapp, RN Smith, and Dr. Ivens. The Court should adopt the R&R on this issue.

### 2.    An Amendment Will Prejudice CoreCivic.

Plaintiffs assert that, because they already deposed Warden Koehn, HSA Holley, COUM Sapp, RN Smith, and Dr. Ivens, "there would not be a **significant** delay in proceedings if Plaintiffs were allowed to add them as Defendants in this case, thus, diminishing [CoreCivic's] argument as to prejudice." (Dkt. 91 at 13 (emphasis added).) First, Plaintiffs concede that adding these Defendants would delay this litigation. As detailed above in footnote four, this case has already been significantly (and unnecessarily delayed). Additionally, and although Plaintiffs assert that they have deposed these individuals, they do not represent that they do not intend to propound written discovery should these individuals be added as Defendants. The fact that Plaintiffs did not make this representation indicates that

---

[6] Moreover, and while Plaintiffs complain about redactions in CoreCivic's document productions and attempt to use those redactions as a justification for failing to add Defendants earlier (Dkt. 91 at 11), Plaintiffs did not ask CoreCivic to produce unredacted versions of its documents until **one year** after CoreCivic produced them. (*See* Exhibit 2, Letter from Rood to Armeni, dated Sept. 25, 2023, at 1.) This is further evidence that Plaintiffs did not review documents as CoreCivic produced them. Plaintiffs' decision to wait until the eleventh hour to review the documents in this case is not reason to allow an untimely amendment to CoreCivic's detriment.

Plaintiffs intend to conduct additional discovery, which will further delay this matter and prejudice CoreCivic.

Further, and most egregious, these newly added Defendants would be prejudiced in being required to defend claims after the expiration of the statute of limitations. The statute of limitations for any wrongful death action is two years. N.R.S. § 11.190 (4)(e). Accordingly, any claim against Warden Koehn, HSA Holley, COUM Sapp, RN Smith, or Dr. Ivens should have been brought by October 8, 2022 (two years after Decedent's death). Warden Koehn, HSA Holley, COUM Sapp, RN Smith, or Dr. Ivens will therefore be prejudiced if the Court permits Plaintiffs to bring claims against them after the expiration of the statute of limitations.

The Court should therefore find Plaintiffs' assertion that adding these individuals as Defendants would not prejudice CoreCivic meritless and adopt the R&R on this issue.

## III.   Conclusion

For the above reasons, CoreCivic respectfully requests that the Court adopt Magistrate Judge Youchah's R&R in its entirety and deny Plaintiffs' Motion to Amend with prejudice.

DATED this 23rd day of January, 2024.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By /s/ Kristina R. Rood
　　Ashlee B. Hesman
　　Kristina R. Rood
　　3100 West Ray Road, Suite 300
　　Chandler, Arizona 85226
　　ahesman@strucklove.com
　　krood@strucklove.com

　　Gina G. Winspear
　　DENNETT WINSPEAR
　　3301 North Buffalo Dr., Suite 195
　　Las Vegas, NV 89129
　　GWinspear@dennettwinspear.com

　　*Attorneys for Defendant CoreCivic*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Paola Armeni          parmeni@clarkhill.com
Gia N. Marina         gmarina@clarkhill.com

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Kristina R. Rood

14