UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ATLP, a minor, by and through his Guardian Ad Litem TAYLORIA TAYLOR, et al.,<br><br>Plaintiff(s),<br><br>v.<br><br>CORECIVIC, INC.,<br><br>Defendant(s). | Case No. 2:21-CV-2072 JCM (EJY)<br><br>ORDER |

Presently before the court is Magistrate Judge Elena Youchah's report and recommendation (ECF No. 89) to deny plaintiff Tayloria Taylor ("Taylor")'s motion to amend complaint. (ECF No. 77). Taylor, as co-special administrator of the estate of Brandon Patton ("Patton") and as guardian ad litem for minor plaintiffs ATLP and AJP, filed a partial objection to the report (ECF No. 91), to which defendant CoreCivic, Inc. ("CoreCivic") responded. (ECF No. 94).

**I.      Background**

This case arises from Patton's death while detained at the Nevada Southern Detention Center ("NSDC") during the COVID-19 pandemic. (ECF No. 1 at 4). During Patton's detention, the World Health Organization officially declared the outbreak of COVID-19 a pandemic, and the Centers for Disease Control and Prevention stated that individuals with heart, lung, and kidney diseases were at higher risk of serious COVID-19 illness, which could result in death. (*Id.* at 5–

**James C. Mahan**
**U.S. District Judge**

6). Plaintiffs' original complaint alleged that CoreCivic, the operator of NSDC, failed to adequately protect against COVID infections inside NSDC. (*Id.* at 6–7).

Specifically, plaintiffs alleged that upon arrival at NSDC, officials documented that Patton suffered from several medical conditions, including hypertension, asthma, obesity, and kidney disease, amongst others. (*Id.* at 4–5). Then, despite knowledge that Patton was at "high-risk" for severe COVID-19 infection, CoreCivic placed him in the general population, failed to adequately follow policies to prevent COVID-19 infection, and maintained a "cavalier" attitude toward those policies. (*Id.* at 6–7). Plaintiffs also claimed that when Patton was placed in solitary confinement to protect against COVID-19 infection, prison staff turned off air conditioning in the unit in retribution. (*Id.* at 5–7).

Approximately a month after being placed in solitary confinement, Patton fell ill with COVID-19. (*Id.* at 8). After a thirteen-day hospitalization, Patton died from COVID-19 complications. (*Id.*). Plaintiffs brought this action against CoreCivic. Taylor alleged claims for wrongful death, negligence, gross negligence, and negligent training and supervision, and the minor plaintiffs joined in all her claims except for the claim for negligence. (*Id.*).

CoreCivic moved to dismiss plaintiffs' complaint in its entirety. (ECF No. 14). The court granted CoreCivic's motion to dismiss plaintiffs' claims for gross negligence and negligent training and supervision, and it denied the motion as to the wrongful death and negligence claims. (ECF No. 33).

Almost a full year after the court issued its order, during which time extensive discovery proceedings occurred, plaintiffs filed a motion to amend their complaint, the subject of the magistrate judge's report. (ECF No. 77). The proposed amended complaint seeks to add five individual defendants as parties to the case, all of whom were employed by NSDC.

**James C. Mahan**
**U.S. District Judge**

- 2 -

The five individuals whom plaintiffs seek to add as parties in their proposed amended complaint are: (1) Rebecca Smith ("Smith"), a registered nurse and clinical nurse supervisor; (2) Bonnie Holley ("Holley"), a health services administrator; (3) Eugene Sapp ("Sapp"), chief unit manager at NSDC; (4) Brian Koehn ("Koehn"), a warden; and (5) Keith Ivens ("Ivens"), chief medical officer. (ECF No. 77-1 at 4).

Magistrate Judge Elena Youchah issued a report and recommendation that this court should deny plaintiffs' motion to amend their complaint. (ECF No. 89). Plaintiffs formulate two objections: (1) that the five proposed additional defendants should be included in the causes of action for wrongful and death and negligence and (2) that CoreCivic did not meet its burden demonstrating undue delay and prejudice. (ECF No. 91). This court adopts the magistrate judge's report and recommendation in full.

## II.     Legal Standard

This district's magistrate judges are authorized to resolve pretrial matters subject to the assigned district judge's review. 28 U.S.C. § 636(b)(1)(A); *see also* LR IB 3-1(a) ("[a] district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case under LR IB 1-3 . . . ."). The reviewing district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); *see also* LR IB 3-2(b).

The district court applies a "clearly erroneous" standard to the magistrate judge's factual findings, whereas the "contrary to law" standard applies to the legal conclusions. *See, e.g.*, *Grimes v. City and Cnty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991). However, if a party files written objections to the report and recommendation, the district court must "make a *de novo*

**James C. Mahan**
**U.S. District Judge**

- 3 -

determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* LR IB 3-2(b).

### III.     Discussion

Having reviewed the record and report, this court holds that the factual findings are not clearly erroneous and these legal holdings are not contrary to law. Accordingly, save for a *de novo* review of plaintiffs' specific objections leading to the contrary, this court will adopt in full Magistrate Judge Youchah's report and recommendation denying plaintiffs' motion to amend their complaint. (ECF No. 77).

To that end, plaintiffs objects to two of the report's factual findings and both legal conclusions. Plaintiffs contend that Magistrate Judge Youchah (1) erroneously concluded that the five proposed additional defendants fail to state a claim for wrongful death and negligence and (2) incorrectly determined that CoreCivic met its burden as to showing undue delay and prejudice on the part of plaintiffs. (ECF No. 91 at 2, 10). The court will address each of these objections in turn.

A. <u>Negligence and wrongful death claims</u>

The court first addresses whether any of the five proposed individual defendants adequately stated a claim for negligence and wrongful death.

A prima facie case for negligence requires the plaintiff to show that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached said duty, (3) the breach caused the plaintiff's injury, and (4) the plaintiff was damaged. *Joynt v. Cal. Hotel & Casino*, 835 P.2d 799, 801 (Nev. 1992). To assert a cause of action for wrongful death, heirs and personal representatives must allege facts sufficient to demonstrate that "the wrongful act or neglect of another" caused a person's death. NRS 41.085(2).

**James C. Mahan**
**U.S. District Judge**

- 4 -

        *i.*        Rebecca Smith

Plaintiffs' proposed amended complaint alleges that Smith "presented the decedent with the [w]aiver form he ultimately signed leading to his move into the general population [of NSDC]; and she, along with Koehn, Ivens, and Holley, was responsible for implementing, executing, and/or approving the [w]aivers provided to detainees when they were coerced into moving housing units." (ECF No. 77-1 at 11).

There is no causal link between Smith's presenting Patton with the waiver and his subsequent injury and death. As explained by the magistrate judge, plaintiffs do not allege that handing Patton the waiver proximately caused his exposure to COVID-19. (ECF No. 89 at 12).

"A proximate cause of an injury can be said to be that which necessarily sets in operation the factors that accomplish the injury." *Williams v. State*, 50 P.3d 1116, 1125 (Nev. 2002). There is no connection linking Smith's handing Patton the COVID-19 waiver to his subsequent injury and death. While plaintiffs attempt to allege that Smith coerced Patton into signing the form, there is no specific allegation that this coercion, even if true, caused his death. The court adopts the magistrate judge's report and recommendation as to Smith.

        *ii.*       Bonnie Holley

Plaintiffs allege that Holley was the individual who coordinated the implementation of the waiver and failed to discuss its contents with NSDC employees. (ECF No. 77-1 at 13). Again, plaintiffs simply do not show that these actions or inactions resulted in Patton's death.

Plaintiffs' objection as to Smith is circular and illogical, stating that "it naturally follows from a reading of the Complaint . . . that by presenting the waiver to Mr. Patton, a high-risk detainee, this action . . . sets in operation the factors that accomplish the injury." (ECF No. 91 at

**James C. Mahan**
**U.S. District Judge**

4). The phrase "naturally follows" forces the court to make numerous factual leaps and logical deductions that simply do comport with the four corners of the proposed amended complaint.

Without more specific allegations, plaintiffs' claims are entirely conclusory. The court adopts the magistrate judge's report and recommendation as to Holley.

### iii.  Brian Koehn

Plaintiffs allege that Koehn, a warden at NSDC, assisted in implementing the COVID-19 waiver and coerced Patton into moving to the general population. (ECF No. 77-1 at 13-15).

The court concurs with the magistrate judge's reasoning why plaintiffs fail to state a claim as to Koehn. Plaintiffs fail to allege facts explicitly showing that Koehn knew Patton specifically was at high-risk for contracting COVID-19. As elucidated by the magistrate judge, there is no tie between (1) Koehn's alleged knowledge that inmates were being pressured to sign the waiver and move housing units and (2) the "natural or continuous sequence of events" leading to Patton's death. (ECF No. 89 at 13).

The proposed amended complaint alleges that Koehn knew that detainees were coerced into moving housing units. (ECF No. 77-1 at 9). However, the focus of this action is Patton specifically, not detainees generally. Even if Koehn knew other detainees were being coerced, there is no connection between his knowledge and Patton's high-risk status. It thus seems implausible to claim that Koehn's practices ultimately led to Patton's death. The court adopts the magistrate judge's report and recommendation as to Koehn.

### iv.  Eugene Sapp

The proposed amended complaint alleges that Sapp "was responsible for supervising case managers and staff, yet he chose to ignore when NSDC staff moved between quarantined and non-quarantined units or refused to wear proper PPE equipment." (*Id.* at 9).

**James C. Mahan**
**U.S. District Judge**

The allegations pertaining to Sapp are conclusory.  Plaintiffs fail to allege that without Sapp's supposed procedural failures, Patton's death would not have occurred.  Moreover, even accepting the allegations as true that Sapp knew his failure to wear PPE equipment would place individuals at a higher risk of contracting COVID-19, there is no allegation specifically tied to Sapp's knowledge of Patton.

In fact, there is nothing in the proposed amended complaint to indicate that Sapp knew Patton was at high-risk of contracting the virus to begin with.  The court cannot extrapolate general allegations regarding the broad NSDC population to a specific nexus between Sapp and Patton.  The court adopts the magistrate judge's report and recommendation as to Sapp.

    *v.*    *Keith Ivens*

Plaintiffs plead that Ivens, a medical doctor at NSDC, failed to ensure implementation of new protocols and practices designed to prevent the spread of COVID-19.  (*Id.*).

The magistrate judge found that plaintiffs did not detail any specific protocols or practices by which Ivens failed to follow.  (ECF No. 89 at 14).  Plaintiffs' objection includes the description of multiple conditions at NSDC during the time of Patton's incarceration, such as inmates sharing a limited number of showers, not having soap dispensers in the bathrooms, and lacking access to essential personal hygiene items such as hot water.  (ECF No. 91 at 9).

This general description of the conditions at NSDC does not include any specific protocols or practices Ivens should have implemented.  Furthermore, plaintiffs fail to include a causal nexus between the actions or inactions of Ivens and Patton's injury and death.  Plaintiffs must allege that Ivens' failure to implement certain protocols and practices caused Patton's death.  They fail to do so.  The court adopts the magistrate judge's report and recommendation as to Ivens.

. . .

B. <u>Undue delay and prejudice</u>

Plaintiffs object to the magistrate judge's finding that CoreCivic met its burden in showing that plaintiffs demonstrated undue delay and prejudice in moving to amend their complaint. (ECF No. 91 at 10-13).

This case commenced over two years ago, with discovery beginning one year ago. (ECF Nos. 1; 60). The court concurs with the magistrate judge that plaintiffs had substantial time to develop and plead sufficient facts to support proximate cause of injury as a result of the five aforementioned individuals' actions or inactions. Plaintiffs deposed four of the proposed additional defendants before filing their motion to amend.

Granting this motion would cause undue prejudice to CoreCivic, who has complied with all the of the court's requirements and would have to litigate and bear costs for another round of superfluous proceedings.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Magistrate Judge Youchah's report and recommendation (ECF No. 89) be, and the same hereby is, ADOPTED in full.

IT IS FURTHER ORDERED that plaintiffs' motion to amend their complaint (ECF No. 77) be, and the same hereby is, DENIED WITH PREJUDICE.

DATED March 11, 2024.

*/s/ James C. Mahan*
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 8 -